36  316
65  533

## COLLINS V. KARATOPSKY.

1. PRACTICE IN CIRCUIT COURT: *Discretion of judge in conducting trial.*
   The discretion of the circuit judge in conducting a trial will not be controlled by this court when no substantial right has been invaded and no abuse is manifest.

2. SAME: *Exceptions: Noting upon the record.*
   A defendant does not waive his exceptions to the ruling of the circuit court sustaining a demurrer to part of his defenses, by going to trial on others held good, nor by failing to note the exceptions upon the record.

3. DAMAGES: *To lessee from lessor's neglect to repair: Injury to health.*
   Damages sustained by a lessee in the death of a member of his family from the lessor's neglect to repair and improve the premises as contracted in the lease, are too remote, and not pleadable in recoupment against the demand for rent.

4. PLEADING.
   To an action of unlawful detainer, a plea ——— that since the commencement of the suit the defendant and the plaintiff had submitted the matters in controversy to arbitration, upon agreement that the plaintiff should take the defendant's furniture on the premises, in payment of the rent, at such price as the arbitrators should assess, and should pay to the defendant the excess of its value, if any, above the amount found due for rents, and that the defendant should deliver possession of the premises and furniture to the plaintiff upon payment of such excess; and that the arbitrators had duly acted, and assessed the rents, and value of the furniture, the latter exceeding the rents, and that the defendant had offered to perform the award and the plaintiff had refused; and asking for specific performance and transfer of the cause to the equity docket, is not good as a counter-claim, nor as a bill for specific performance.

5. SPECIFIC PERFORMANCE: *Contracts for personalty.*

Equity will not decree specific performance of a contract in regard to personal property when there are no allegations in the bill, of insolvency of the defendant, or of any peculiar value of the property.

6. ARBITRATION: *Award, when enforced.*

An award will not be good as a statutory award, unless the proceedings of the arbitrators as to the oath taken by them, and other duties, have been substantially, if not strictly, in pursuance of the statute. But an arbitration and award as at common law are still good and enforceable notwithstanding the statute.

7. LANDLORD AND TENANT: *Eviction of tenant: Effect on rent.*

The eviction of a tenant by a landlord, of a material part of the demised premises, suspends the rent during the eviction, for the whole; but eviction by a stranger apportions the rent.

APPEAL from *Garland* Circuit Court.

Hon. J. M. SMITH, Circuit Judge.

*Davies*, for appellants:

Court erred in sustaining demurrer to third part of first answer. 106 *Mass.*, 201; *VIII Am. Rpts.*, 322; 63 *Ill.*, 430; 113 *Mass.*, 481; 117 *Mass.*, 262.

Appellant's instructions should have been given. Improper instructions given on behalf of appellee.

*Cohn & Cohn*, for appellee:

Exceptions to rulings, on demurrer to first answer, waived by filing amended answer. 30 *Ark.*, 684; 53 *Ind.*, 78; 4 *Green (Iowa)*, 259; 26 *Iowa*, 569; *ib.*, 297; 42 *Ill.*, 291; 22 *Iowa*, 538; 9 *Grat. (Va.)*, 483.

No such defenses as the amended answer sets up are contemplated by the act on forcible entry and detainer. *Acts of* 1874–5, *sec.* 17, *p.* 199, *et seq.*

Courts of law will not enforce agreements to arbitrate.

The small encroachment on the land was no eviction. *Taylor's L. & Tenant*, secs. 288, 389; 118 *Mass.*, 582; 31 *N. Y.*, 514; 81 *Ill.*, 607. Even if it were so, the plaintiff

could recover for the balance *pro tanto. Taylor (supra);* 19 *Wend.,* 358; 10 *Gray (Mass.),* 285.

### STATEMENT.

EAKIN, J. Collins, as tenant of Karatopsky, took possession of a house and lot to hold by agreement for a year, from the first of October, 1877; and, on that date, paid $60 in advance for the rent of one month. Shortly afterwards, some change in the terms having been agreed upon, they executed a written lease bearing date as of the first, by the terms of which the latter agreed to let the premises to Collins for a year, at a monthly rent of fifty dollars to be paid monthly, in advance, Collins binding himself to pay the same, with ten per cent. interest in case of failure. It was provided that the lessor should have a lien for arrears, on all buildings and movable property on the premises, with the right, in case of default for five days, of ejecting the lessee without further notice. Certain portions of the premises were by bounds reserved to the lessor, and he, on his part, agreed " to put up a high, close fence on the agreed line of division, and put a door in the place of the window in the 'old' room of the house—to build a privy for the use of Collins similar to the one now on the lot, and ' to put a floor in the garret,' all to be done 'as soon as possible and in a reasonable time.'"

Karatopsky, on the twelfth of November, of that year, made a written demand for possession. That being refused, he, on the first day of December, brought this action of unlawful detainer. The defendant gave bond and retained the property.

The complaint exhibits the lease as the foundation of the action, acknowledges the payment of a month's rent in advance, on the first of October, and charges failure to pay rent on the first of November, when, it claims, the sum of fifty dollars was due, and remained unpaid. It alleges the

demand, the refusal, and continued detention, and prays judgment for the possession, and general relief.

The defendant answered in six paragraphs:

"1. Not guilty of an unlawful detainer.

"2. Admitting the execution of the written lease he charges that the plaintiff agreed thereby to erect a high and close fence on the agreed line of division between the leased premises and those occupied by himself; also to build a certain ell-room and out-house on the premises; and to put a floor in the dwelling. That it was mutually understood between them that he should do so in a reasonable time, and that plaintiff should not be entitled to his rent, until he had performed the covenants of the lease, and that he had failed.

" 3. He denies that any rent is due; because immediately after his entry into possession, and before suit, he charges that plaintiff, and several members of his family, forcibly, and without cause, took possession of a part of the leased premises, disturbing his quiet enjoyment.

" 4. He says that by reason of the matters above set forth, and the unreasonable neglect of plaintiff in carrying out the stipulations of the lease, he has been damaged ten thousand dollars; such neglect having caused the death of one of the members of his family, and the prolonged sickness of others.

" 5. He says that afterwards, on the twenty-fourth day of April, 1878, he and the plaintiff made an agreement, in writing, for the settlement of the matters in controversy herein (which is exhibited), whereby he agreed to pay plaintiff fifty dollars a month for the occupancy of the premises, after deducting what had been paid, as rent; and defendant agreed to, and did, accept the furniture of defendant in the dwelling and on the premises, excepting certain specified articles, in payment of said rent, at a price

to be fixed by arbitrators; and whereby, also, defendant agreed to vacate the premises whenever plaintiff should pay the award of the arbitrators, should the value of the furniture exceed the amount claimed for rent; that defend-ant did agree to pay the surplus; and that the agreement should be 'a final binding and conclusive settlement of all matters pending in this suit.'

"6. This goes on to say, that the arbitrators were em-powered to call in a third person to assist them in valuing the furniture; that the arbitrators took the oath, substan-tially, as prescribed by law, on the next day; and about the first of May valued the furniture at $623.40, which left plaintiff indebted to defendant in the sum of three hundred and twenty dollars; that he offered to deliver to plaintiff pos-session of the premises and furniture, on payment of the said balance; which plaintiff refused to accept, making no other objection than that the appraisement had been too high."

He prays for judgment for said sum, and for $10,000 damages; and that defendant be required specifically to perform his part of the contract; that copies of the award made be entered of record, and made the judgment and decree of the court, and the submission made a rule; and concludes with a motion to transfer to the equity docket.

We gather from the record that this answer is an amend-ed one. A demurrer to a former answer had been partially sustained, and leave granted to amend. One answer only is copied into the transcript, which seems to have been the last, as amended. To this answer there was a general demurrer, by separate paragraphs. The court sustained it as to the fourth, fifth and sixth, overruling it as to the others.

Upon a trial of the issues, the jury found for the plain-tiff, and assessed his damages at $332.80, for which judg-ment was entered, with writ of substitution.

The testimony on the plaintiff's part admitted that the

Collins v. Karatopsky.

ten dollars of over-payment for October was to be credited on the rent for November; and tended to show that he had put a door in the ell-room, erected a privy, put a floor in the garret, and built a fence partly across the lot five or six feet high, his kitchen forming part of the fence-line, which has three windows overlooking defendant's premises; and that the kitchen had been built about twenty inches over the agreed line. Also, that about the time of bringing suit, he had been offered seventy-five dollars a month for the rented premises. Further, that he had given defendant ten feet more in his front yard than he had stipulated; and that defendant never objected to his building the kitchen after the execution of the second lease. The lease was shown, and the demand and the refusal of the rent.

The testimony on defendant's part tended to show that the building of the kitchen by plaintiff encroached upon the rented premises about two and a half feet; that a high, close fence was not built to separate the two places, but a fence was built only to a corner of the house, leaving defendant's yard exposed from its windows. The refusal to pay rent was wholly on the ground of plaintiff's failure to comply with the agreement on his part. It tended also to show that at the time notice to quit was given, plaintiff was indebted to defendant about $20 for occupation of a room in the rented premises.

Defendant offered, and was not permitted, to introduce evidence to show that the neglect of plaintiff, with regard to his contract, had caused the death of one of the defendant's family; that plaintiff and his wife entered the premises and grossly insulted defendant's wife, and held possession for a time; or to what extent defendant was damaged by plaintiff's non-compliance with his contract, up to the time he demanded possession; or to introduce any writings to

21—36

show the submission of their matters to arbitration, and the awards made thereon.

Stating, for brevity, the substance of the instructions, they were as follows, for the plaintiff:

"1.  That the lease expressed the contract for renting, and if the jury believe that on the first day of November, 1877, the rent was due, and that it was demanded and not paid by the fifth, the plaintiff had a right to determine the lease and demand possession; and if they find demand of the premises and failure to deliver, they should find for plaintiff.

"2.  That the trespassing upon the demised premises to the extent of twenty or thirty inches by building a house to that extent over the line (if done), is no bar to a recovery in this action.

"3.  If they believe the plaintiff has in some respect failed to comply with some of the stipulations in the lease, that does not authorize defendant to keep possession without paying rent according to its terms.

"4.  If either plaintiff or defendant failed to comply with the terms of the lease, the remedy for each was by action; and any default on the plaintiff's part, would not defeat his right of action, but be only in mitigation of damages.

"5.  That if they find for plaintiff, they should assess such damages as he may have sustained by being kept out of possession, in estimating which they may consider the reasonable rent value, for their occupation after suit."

To all these the defendant excepted; and the court, for him, instructed:

"1.  If the jury believe that when the demand was made for rent by plaintiff, none was due, they should find for defendant."

But refused to instruct as follows:

"2. If the jury believe that after the execution of the lease, and before suit, the plaintiff knowingly and willfully took possession of, and still holds, any part of the premises, however small, without defendant's consent, they will find for defendant.

"3. This regards the arbitration, and as that was not in issue, need not be noticed.

"4. If they believe defendant reasonably performed his part of the agreement, and objected to going further, because the plaintiff unreasonably refused to perform his own part, it was excusable.

"5. If they find the rent was due the first of each month in advance, a postponement, on plaintiff's part, of the collection, terminated the written lease, and substituted a new one."

Some complaint is made of the rulings of the court in directing the conduct of the case, but as they are within the scope of his discretion they will not be noticed. Much must be left to the good sense and practical judgment of judges, in the confusion of business at *nisi prius;* and this court has not deemed it prudent to control them in such matters, where no substantial right is invaded, and no abuse manifest.

1. Practice in Circuit Court: Discretion of judge in conducting trial.

The motion for a new trial, besides the usual ground, that the verdict is contrary to law and evidence, is based upon errors in giving and refusing instructions—in excluding evidence; and in the assessment of damages.

OPINION.

The exceptions of defendant, to the judgment sustaining the demurrer as to the fourth, fifth and sixth paragraphs of the answer, were not noted of record. They were not however waived by going to trial on the others, held good,

2. ———: Exceptions: Noting upon the record.

nor by failure to note them on the record. The errors alluded to in section 4463 of Gantt's Digest, and which, as there provided, must be excepted to at the time, and noted of record, are only those made on motion, regarding the mode of proceeding. "This chapter" in the original Code included the matter in the Digest from sections 4450 to 4468 inclusive.

Errors appearing in the record proper, and requiring no bill of exceptions to bring them to the notice of this court, need not be excepted to when made; but may be waived by subsequent proceedings by the party aggrieved, according to the common law practice. The defendant is entitled to each and every defense he can make, and if deprived of one on demurrer, he may insist upon his right on appeal, although he may have lost on trial of the others. There is nothing to show us what the answer originally was; and we can only act upon it, here, as amended.

We suppose all matters upon which defendant intended to rely were contained in the answer which appears.

3. DAMAGES:

Injury to health from lessor's neglect to repair.

The demurrer to the fourth paragraph was properly sustained. The damages claimed are too remote, and not of a character to be set up by way of recoupment against a claim for rent. Besides it is not law, that one may in all cases recover money for the death of "a member of the family."

The fifth and sixth paragraphs must be taken together as intended for one defense. It was not good as a counterclaim; as the right set up did not arise out of the contract or transactions set forth in the complaint, nor was it sufficiently connected with the subject of the action.

The rights of defendant under it grew out of a subsequent contract for which the settlement of this suit formed the consideration.

Besides, viewed as a counter-claim, it would have re-

Collins v. Karatopsky.

quired cross-judgments to be rendered at law, in favor of defendant for money, and in favor of the plaintiff for occupation of land and title in furniture. This, when it may be done at all, is appropriate only to a court of chancery.

But there is no principle upon which the matters set up in the fifth and sixth paragraphs can support a bill in equity for specific performance. The contract regards personal property, and there are no allegations of peculiar value, or of insolvency. The failure of plaintiff to receive the goods and pay for them, if the contract be valid, is fully within the remedies afforded at law.

*5. Specific Performance: Contracts concerning personal property.*

Nor are the transactions valid as making a statutory award, principally for the reason that the statute was not strictly or even substantially pursued. This is revealed by the answer itself, which sets forth the oath taken by the arbitrators. It was that " with strict impartiality and fairness" they would perform the duties assigned them by the agreement of the parties. The statute required them to swear that they would " decide the controversy, to them submitted, according to law and evidence, and the equity of the case, to the best of their judgment, without favor or affection." It is not alleged that the parties had reasonable notice of the time and place of meeting; nor that the arbitrators returned into court the original award in writing, all of which the statute required to be done. The arbitrators made no award as to the rights of the parties under the charges in the complaint. The plaintiff's right to the rent, and the restitution of the premises, were conceded by the agreement, or yielded by defendant in consideration of the other stipulations. The arbitrators did not, nor were they required to, direct that anything should be done or paid by either party. They found only one fact, the value of the property, and there rested. That settled the matters between the parties in connection with the agreement,

*Pleading: Defense: Arbitration and award, and performance by defendant.*

but taken altogether, they would not, if returned and entered of record, make such a judgment or decree, as a court could without additional orders, carry into execution by any ordinary process. It seems clear that this does not present such an arbitration and award as the statute seems to contemplate.

There remains to be considered, with regard to this part of the answer, whether it could be considered as setting up matter *puis darrein continuance*, which should in any manner defeat the rights of the plaintiff to further prosecute the suit.

The agreement is a valid one at common law, made upon sufficient consideration, for the express purpose of ending the controversy; the defendant waiving thereby all his defenses against the payment of rent at the full rate of fifty dollars a month during his whole occupancy, and agreeing to relinquish all his rights in the remainder of the term, and to pay in specified furniture ; the plaintiff on his part, virtually agreeing to accept the same, and to take in payment of the rent certain furniture at a valuation to be made by parties agreed upon by both ; and to pay defendant the surplus. The agreement is alleged to have been fairly carried out by defendant so far as appears to have been within his power. The valuation was made according to directions, and the gross sum determined. The value of the rent from the first of November to the time of the arbitration at the full rate of fifty dollars per month was deducted by defendant, and he offered on payment of the balance to deliver up the premises and the furniture, which was refused, without any valid cause alleged. That it seemed to plaintiff too high, without any charge of fraud, or misconduct, was no excuse.

Arbitration as at common law, good, notwithstanding the statute. The express intention and legal effect of the written agreement, was to withdraw the matters in controversy from the tribunal in which the suit was pending; and sub-

mit to another, constituted by themselves, the decision of the matter upon which they had not themselves agreed, which was the value of the several articles of furniture. It was not an accord and satisfaction, for the agreement between the parties was not complete and definite; and there was on the defendant's part no satisfaction of the claim for possession and damages, only an offer, which, as satisfaction of an accord, is not sufficient. It has, however, all the essential elements of an arbitrament, being a submission of certain things to the judgment or decree of persons elected by the parties. (*Blackstone's Com., book 111, p. 16, Comyn's Digest "Arbitrament." A.*) This may still be done as at common law, notwithstanding the statute (*Wilkes v. Cotter, 28 Ark., 519*), and any award properly made on a proper submission is of such dignity that, "thereby the question is as fully determined, and the right transferred or settled, as it could have been by the agreement of the parties, or the judgment of a court of justice." *1 Black. Com., supra.*

The submission itself imports mutual promises, and from the essential nature and purpose of the mutual obligation, it removes the controversy from the jurisdiction of the courts, which fact, however, must be properly brought to their notice. This was done, at common law, by plea; and, as now held in some states, may be done by motion; if the submission be made after suit commenced. If an award has been made, and the time for performance has passed, the pleader must generally show performance on his part, except, as here alleged, "where the plaintiff himself is the cause, that it was not performed." An instance is put of where a defendant tendered money at the day, and it was refused, (*Comyn's Digest, "Accord" D, 2,*) which was held sufficient.

In *Jewell & McKee v. Blankenship, 10 Yerger, 439,* it was

held that submission to arbitration, pending a suit, amounted to a discontinuance of the cause and might be so relied on. That if parties by their voluntary act submitted their cause to another tribunal chosen by themselves, the jurisdiction of the court determines. The question in that case was raised by plea *puis darrein continuance,* and the principle was rested on the authority of the case of *Green v. Patchen in 13 Wend., 294.* See, also, *Ressequie v. Brownson, 4 Barb., 543; Wells v. Lane, 15 Wend., 101; Conger v. Dean, 3 Clarke (Iowa), 463.*

On the facts of the answer, as admitted by the demurrer, it was good to show that plaintiff had no right further to prosecute his action, and if on proper inquiry the defendant had shown the averments to be true, it would have been proper to render judgment that the suit be discontinued, leaving the parties in the situation in which they had placed themselves. It was error to sustain the demurrer to the fifth and sixth paragraghs of the answer.

With regard to the issues made in the case by the paragraphs sustained as good, it is necessary to consider that the action is peculiar, in derogation of common law, and may be often harsh in its application. It depends wholly on statute. The gist of the action, like replevin of personal property, is the recovery of immediate possession.

7. UNLAWFUL DETAINER: Defense to: Counter-claim for damage is not.

Nothing is a good defense which does not defeat the right of the plaintiff to possession at the time the action began, unless it be something happening since, to make the further prosecution of the suit improper. Ordinarily, no counter-claim for damages is allowable in this action to defeat the recovery of the land after the expiration of the term, but during its continuance they may be used, to show that under the circumstances the plaintiff had no right to determine a lease, not yet expired.

In this case the rent of November was payable in

Collins v. Karatopsky.

advance; and, by the terms of the lease, must be paid by the fifth, or the lease would terminate. If on the first of November the defendant had been already damaged to the extent of the rent then payable, by the plaintiff's failure to perform his own agreement, or by eviction from the whole or a material part of the premises, for any portion of time, by the lessor, he might show that, to excuse the non-payment of rent on the first of November, thus avoiding a forfeiture of the remainder of the term. Such a defense would be made at his peril, but would go to the gist of the action, as it would if successful defeat the landlord's right to immediate possession.

With regard to eviction by the landlord himself, the result of all the English authorities is, that if it be of any material part of the demised premises, and not a mere trespass, it suspends the rent during the eviction, for the whole. It is placed upon the ground of the landlord's wrong, in the violation, by him of the duty, which springs from the relation, to protect the tenant in his quiet enjoyment of the whole. It is otherwise in case of eviction by a stranger. There the rent is apportioned. There has been a strong tendency in some of the American courts, following an opinion of Chief Justice DALLAS at *nisi prius*, to hold that even in case of eviction by the landlord, the whole rent is not suspended if the tenant continues in possession of the residue. Many other American courts, however, follow the English doctrine out and out, and the weight of authority largely preponderates in that direction. This court conceives it the better doctrine to be applied in a case like this where the landlord seeks to terminate an existing lease, by forcible detainer under an option given him in the lease itself, on account of installments unpaid during the term. Whether or not he may have some claim to apportion the rents, and recover a part by some other

8. LAND-
LORD AND
TENANT:
Eviction
of tenant:
Effect of on
rent.

proceeding, as due from use and occupation, is a question we are not called upon, and do not decide. See *Taylor's Landlord and Tenant, sec. 378; Fuller v. Ruby, 10 Gray (Mass.), 285, in which the authorities pro and con are cited; and the later case of Colburn v. Morrill, 117 Mass., p. 262, in which the English doctrine is fully adopted.* See also *Skagg v. Emerson, 50 Cal., 3, and Lynch v. Baldwin, 69 Ill., 211.*

EVICTION: What amounts to, is a question for the jury.

The cases cited, and others, determine, also, that what amounts to an eviction is a question for a jury.

DAMAGES: Plaintiff can have judgment only for restitution and cost.

It remains to consider the true rule as to damages. The act of March 2, 1875, regulating actions of forcible or unlawful detainer, enabled the plaintiff, upon giving bond, to obtain possession of the premises at the beginning of the suit; and, upon a verdict in his favor, entitled him to a judgment for costs. If, however, the verdict in such case should be for defendant, it is made the duty of the jury, at the same time, to assess the damages sustained by him in having been dispossessed, and judgment therefor is to be given against the plaintiff and his sureties.

These provisions are, in substance, the same as those formerly in force, as contained in *Gould's Digest, chapter LXXII,* under which it was expressly held by this court in *Keller v. Henry, 24 Ark., p. 583,* that the *only* judgment to which *the plaintiff* was entitled, was for costs. The same rule would apply to the act of March 2, 1875.

Section 10 of this act, which provided for the delivery of possession, at the beginning of the suit, to plaintiff, was so changed by an act of December 13, 1875, as to enable the defendant, on his part, to execute a bond and retain the property during the suit. The remainder of the act of March was left intact, and no provision was in such case made for any judgment for the plaintiff, different from that already expressly designated. Perhaps it was a *casus omissus* not to give the plaintiff, where the property was re-

tained, a remedy and measure of relief equal to that given the defendant where the property was taken. But the legislature has not done that, and we can not lay hold of the statute as it stands, and, in the absence of any legislative indication of intent, import into it provisions, dictated by our own views of harmony and equal justice. The whole proceeding is of legislative creation. Crude acts are often construed into shape, upon clear evidence of intention, but the courts have never assumed the power of supplying deficient limbs. Under the law, as it stands, the plaintiff, upon verdict in his favor, would be entitled to a writ of restitution, and judgment for costs only.

Reviewing the matters complained of, in the light of these principles, we find:

1. That it was error to sustain the demurrer to the fifth and sixth paragraphs of the answer. They should have been considered as one, taken together, making simply a defense. The true nature of the paper filed, should determine the decision, on a general demurrer. Effect should be given to that, notwithstanding that gentlemen of the bar will persist in paragraphing and numbering their pleadings as if they were merely literary productions numbered for reference. It is only separate "causes of action," or "grounds of defense," which must be separately paragraphed and numbered. And so with the redundancy of matter in this answer, and its mistaken prayers for cross-relief. They are vices in pleading which cumber the record, and might be stricken out on motion. On demurrer they should be disregarded. *Paragraphing: Pleading.*

It is true that a plea *puis darrein continuance* confesses all other matters in issue (*3 Black., 316*), and can not be relied on in connection with answers to the original merits. But the attempt to do so should be met by a motion to compel election, and not by demurrer. The Code, in allowing a *Plea Puis Darrein Continuance: Effect of.*

defendant to put in as many defenses as he may have, contemplates defenses to the action, and not a plea which questions all further jurisdiction, regardless of merits.

*Not changed by Code.* There is nothing in the Code changing the nature of this peculiar plea.

The court did not err in rejecting evidence with regard to the damages by death of a member of defendant's family; or with regard to the arbitration; for, as the pleadings stood, those matters were not in issue. Nor with regard to the entry by plaintiff and his wife, and their insult to defendant's wife, and their holding possession "for a time." All that might have happened without making a legal eviction. A trespass is not an eviction in all cases. Nor was it error to reject testimony of defendant's damages by plaintiff's non-compliance with his contract "up to the time he demanded possession." The rent was due on the first of November, and if not then paid, or some excuse shown existing at that date, the plaintiff *then* had the right, after five days, to re-enter for the forfeiture, and no subsequent eviction, nor breach of contract, on his part, would avoid that right. The demand for possession was not made until the twelfth.

*Eviction depends on amount of deprivation.* 2. The court erred in instructing the jury, as matter of law, that the building of a house for twenty or thirty inches over the line of the demised·premises was no bar to a recovery. It· assumed that, as the proof in the case, when there was evidence, tending to show, that the intrusion was near two and a half feet. Besides, an eviction depends on the materiality of the deprivation. If trifling and producing no inconvenience, it should not be regarded. It depends on circumstances. Twenty inches might be a great deal in the crowded streets of a city, but wholly in-

*Should be left to jury.* significant in the boundary of a Texas ranche. It should have been left to the jury, on the evidence, to say whether

there had been a willful eviction before the first of November, and for what time, to the end that so much of the rent might be deducted, with other payments, from the amount otherwise payable at that date, in ascertaining whether anything was due. It is in proof that ten dollars in money had been paid, on the November rents, in October, and a proper instruction upon the subject of eviction may have been very material, for *during its continuance,* not a proportion, but the whole rent is suspended.

3. The third instruction, although strictly accurate, is too general, and might have been misleading. The jury might have been led to suppose that no breach of plaintiff's obligations before the first of November would authorize defendant to withhold the stipulated rent upon that day.

4. The fourth instruction is liable to the same objection, and should not have been given. There were no damages to be mitigated. The sole issue was, should the defendant have paid any rent on the first of November? Everything else was admitted, and no damages were in the scope of the suit.

5. It was error to give the fifth instruction as to damages, for reasons above stated.

The true view of the case was presented in general terms by defendant's first instruction which was given. The others were properly refused as asked. A mere trifling, immaterial disturbance of the possession would not, if found to be such, make a real eviction to stop rent; nor would an unreasonable refusal of the plaintiff to perform his part of the contract, be itself an excuse for non-payment of rent if any were due. The arbitration was not in issue, and no delay in making a demand for possession, not long enough of itself to manifest an intention to waive the forfeiture, would defeat the right of action.

For error in sustaining a demurrer to the fifth and sixth

paragraphs of defendant's answer, and in overruling the motion for a new trial:

Reverse, and remand, with instructions to set aside the verdict, and overrule the demurrer in the matter indicated; and for such other and further proceedings as may be in pursuance of law, and this opinion.