FRANK E. DAVIS *vs.* ELIZA S. SMITH.

PROVIDENCE—APRIL 8, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)    *Landlord and Tenant.    Liability of Landlord to tenant and his Family on Covenant to Repair.*

A landlord who has agreed with his tenant to make repairs is not liable in tort to a member of his tenant's family who has received personal injuries resulting from the landlord's neglect to repair.

(2)    *Landlord and Tenant.    Condition of Premises.*

While a landlord who knowingly lets premises infected with a contagious disease and fails to inform the tenant thereof, or who fails to disclose concealed defects, is liable for injuries to the tenant and his family resulting therefrom, he is not liable as an insurer of the condition of such premises nor for defects which might have become known to the tenant by inspection.

TRESPASS ON THE CASE under statute.    Heard on demurrer to declaration, and demurrer sustained.

DOUGLAS, J.  This action is brought under the provisions of Gen. Laws cap. 233, § 14, which provides that: "Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages," etc.

The plaintiff is the father and the sole beneficiary of George L. Davis, whose death, while an infant, he alleges was caused by the failure of the defendant to repair the drains in a dwelling-house where the deceased resided.

The case is certified to this division on substantial demurrer to the declaration.  The declaration is in two counts.

The first alleges that the defendant, being the owner of a certain dwelling-house, leased the lower tenement therein to "the plaintiff and his family for the habitation of said lower tenement and the appurtenances thereof by said plaintiff and said plaintiff's family as tenants from month to month;" that the defendant agreed to keep the premises in repair, and thereupon it became her duty to do so; that she neglected this duty by suffering a water-closet and its appurtenances to be out of repair, foul, and stopped up, emitting gases and odors prejudicial to life and health of the plaintiff and his family; that the "said defendant, to wit, the agent of said defendant," knew or by the exercise of due care ought to have known of the condition of the closet, etc.; that the said child, while occupying the premises, was injured by the odor and gases emitted by the water-closet, and became sick and thereby contracted diphtheria, of which he died.

The second avers a similar letting to "plaintiff and his family;" that the water-closet and drains were old, unsafe, out of repair, and the dangerous condition of them was known to the defendant, to wit, defendant's agent; that "the said defendant, to wit, said agent," knew that a child had previously died in said tenement by reason of said dangerous condition; that the plaintiff and his deceased child entered

upon the premises not knowing its dangerous condition, and the plaintiff and his child could not by due care ascertain such condition; that this condition was not patent or ascertainable by examination and enquiry; that the defendant owed to the plaintiff and his child the duty of informing them of this condition;. that the defendant, disregarding this duty, falsely represented to. the plaintiff and to his minor child that said premises were in good condition whereby the plaintiff and his child were induced to enter and occupy said premises; that by exposure to the odors and gases emitted from the defective water-closet and drains, the child became sick and in a condition to contract disease and did contract diphtheria and died.

There are several obvious defects of form in both these counts which would require amendment before a defendant could intelligently plead to them. The letting set forth in both counts is to "the plaintiff and his family," and the representations set out in the second count are to the plaintiff and his minor child, an infant "of tender years." The absurdity of such allegations is an embarrassment when we take them up for serious consideration. Does the pleader expect to prove, as he has alleged, that the plaintiff and his family, presumably his wife and children, took a joint verbal lease of this tenement, and that the landlord negotiated with and made representations and promises to a child of tender years who had no legal capacity to enter into a contract or to understand the conditions which were under discussion? But aside from the remarkable character of the allegation, the word family is too indefinite to describe a party to a contract. The only proper way to set out the parties to a contract is by their names, and the child is not named as a tenant. For all that appears in the first count, he may not have been born when the lease was made.

The repeated allegation that "the defendant, to wit, the defendant's agent," knew or ought to have known, is not a sufficient allegation for any purpose. If the relation between principal and agent was such that actual knowledge by the agent would be imputed by law to the principal, such relation

should be set out, or knowledge should be alleged in the principal and no mention made of the agent.

Some of these defects of pleading may be cured by amendment, and the points raised by the demurrers and argued by counsel, which go to the substance of the case, may be considered.

(1)    The demurrer to the first count raises the question whether a landlord who has agreed with his tenant to make repairs is liable in tort to a member of the tenant's family who receives personal injuries from the landlord's neglect to repair.

The plaintiff's counsel seems to think that by assuming the lease to have been made to the injured party some advantage is secured, whereas the contrary is true. Tay. L. & T. 9th ed. §§ 175, 175a. *Perez* v. *Rabaud*, 76 Texas, 191, 193. The liabilities of a landlord to a stranger do not arise from contract, and are greater than those which he assumes to a tenant and members of the tenant's family.

. The courts very generally hold that the tenant and his wife, children, servants, and guests can not sue in tort for breach of the landlord's covenant to repair. Strangers in certain cases may do so, but the tenant's remedy is only on the contract.

In *Tuttle* v. *Gilbert Mfg. Co.*, 145 Mass. 169, 174, the court say: "The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. . . . As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract," and again: "We do not see how the cases would differ in principle if an action were brought against a third person who had contracted to repair the stable floor and had unreasonably delayed in performing the contract."

*Thompson* v. *Clemens*, 96 Md. 196, was brought by the wife of a tenant to recover damages for personal injuries sustained by falling through the floor of a porch attached to a house rented by her husband. The declaration alleged that the defendant had promised "to keep and maintain the premises in good, safe and perfect condition." The court hold that, whether the action be *ex contractu* by the tenant himself, or

*ex delicto* by a stranger to the contract, the rule of damages for injury caused by mere breach. of the contract is the same and does not include damages for personal injuries. ". We have no doubt," say the court, p. 207, " that no action, either in contract or in tort, by a tenant, or one of his family, against a landlord to recover. damages for personal injuries should be sustained merely because the latter has been guilty of a breach of contract to make necessary repairs in the premises demised. It is not denied by counsel that such damages are too remote, and not in contemplation of the parties, to be recovered in an action *ex contractu*, and to permit a recovery for such damages based on the contract simply because. it is in form an action of tort would be making a distinction that could not be justified by reason or authority."

*Schick* v. *Fleischhauer,* 26 N. Y. App. Div. 210, s. c. 49 N. Y. Supp. 962, holds that no duty to repair rests upon a landlord except what is created by agreement, that the measure of damages is the expense of doing the work which the landlord agreed to do but did not. " A contract to repair does not contemplate, as damages for failure to keep it, that any liability for personal injuries shall grow out of the defective condition of the premises; because the duty of the tenant, if the landlord : fails to keep his contract to repair, is to perform the work himself and recover the cost in an action for that purpose, or upon a counterclaim in an action for the rent, or, if the premises are made untenable by reason of the breach of the contract, the tenant may move out and defend in an action for the rent as upon an eviction. . . .

" The tenant is not at liberty, if the landlord fails to keep his contract to repair the premises, to permit them to remain in an unsafe condition and to stay there at the risk of receiving injury on account of the defects in the premises and then recover as for negligence for any injuries that he may suffer. Where the sole relation between two parties is contractual in its nature, a breach of the contract does not usually create a liability as for negligence. In such a case the liability of one of the parties to the other because of negligence is based either on the breach of some duty. which is implied as the result of

entering into the contractual relation, or from the improper manner of doing some act which the contract provided for; but the mere violation of a contract, where there is no general duty, is not the subject of an action of tort. *Courtenay* v. *Earle*, 10 C. B. 73."

In *Collins* v. *Karatopsky*, 36 Ark. 316, it was held that damages sustained by a lessee in the death of a member of his family from the lessor's neglect to repair and improve the premises as contracted in the lease are too remote. The same is held of injuries from falling into a cistern which the landlord had promised to repair. *Hamilton* v. *Feary*, 8 Ind. App. 615. *Spellman* v. *Bannigan*, 36 Hun. 174, was a case where the plaintiff was injured by the falling of stairs which the landlord had agreed to repair, and the same principle was followed.

The New York cases, as well as others, are commented upon in *Sanders* v. *Smith*, 5 Miscel. 1, and the *dictum* of Judge Earl in *Edwards* v. *N Y. &c. R. R. Co.*, 98 N. Y. 248, that "if a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which anyone lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured," is said to be contrary to sound reason and the whole current of authority in New York and elsewhere.

The later case of *Miller* v. *Rinaldo*, 21 Miscel. 470, was an action brought by a minor child who was injured by the fall upon him of a portion of the ceiling in apartments in which he lived with his parents, tenants of the defendants, under a monthly lease, and the ground of the action was the defendants' neglect to repair after they had promised to do so. The court says: "Assuming that the promise was enforcible and that the individual who made it had authority to bind the defendants, still the recovery may not be supported." And the grounds assigned for the decision are that the right to require repairs is founded on contract alone, and that only such damages can be recovered from a breach of it as could be recovered from any contractor who fails to perform his work. The *dictum* of Judge Earl is disapproved in *Edwards* v. *R. R. Co.*

The plaintiff cites *Paolino* v. *McKendall*, 24 R. I. 432, as supporting his right to sue in case for breach of the agreement to repair. The words of the opinion to which he refers are, p. 435: "The basis of a cause of action for injury to a person by reason of negligence or want of due care, is the breach of some duty or the non-observance of some obligation that the defendant is under to the plaintiff."

This is very different from saying that an action of tort lies for the breach of one's duty to keep his promise or his obligation to pay his debts.

The text-book which he cites to the same point, 18 A. & E. Ency. Law, 2nd ed. p. 231, holds that: "An action of tort will not lie for the total failure of the landlord to repair according to his agreement." The cases which he cites to show the landlord's liability for damages caused by a nuisance on the leased premises relate to his liability to strangers who have not the power, as the tenant has, to abate the nuisance at the landlord's expense. 2 McA. L. & Ten. 3d ed. p. 1247.

*Moore* v. *Steljes*, 69 Fed. Rep. 518, where it was held that a child of the tenant might recover against the landlord for injuries occasioned by a falling ceiling, is the only case we have found which imposes on the landlord such a liability to members of the tenant's family, or to persons on the premises by invitation of the tenant. The opinion is based upon a paragraph in Wood Land. & T. 735, which relates to a landlord's liability to third persons. The learned court evidently overlooked the distinction which all the authorities make.

The case of *Joyce* v. *Martin*, 15 R. I. 558, was a suit by a stranger against the owner of a wharf used by the public. See opinion in *Henson* v. *Beckwith*, 20 R. I. 167. *Railton* v. *Taylor*, 20 R. I. 279, was an action on the case for the negligence of the landlord in managing a heating apparatus which he retained control of, whereby his tenant was injured.

It is held in *Scott* v. *Simons*, 54 N. H. 426, that a landlord is liable to a tenant or a stranger for negligence in constructing a drain; but it is also held that such negligence must be positive and actual. The case was sent back for a new trial to ascertain the facts, both in regard to negligence of the landlord

and contributory negligence of the tenant. The opinion is not in point here.

As the first count in the plaintiff's declaration is framed in tort, it states no cause of action and the demurrer to it must be sustained.

(2)    The second count is based upon the claim that the defendant has committed a wrong, independent of her breach of contract, which makes her liable for the death of the child.

The law on this subject is laid down with substantial uniformity by the authorities.

Mr. Taylor says, Tay. L. & T. 9th ed. § 175a: "As the lessor does not warrant the condition of the premises, and the tenant, because he can inspect them, assumes the risk of their condition; for any injury suffered by him during his occupancy on account of their defective condition, or even faulty construction, the tenant can not make the lessor answerable unless there was misrepresentation, active concealment, or, perhaps, total inability on the tenant's part to discover the defect before entry."

In Wood Land. & T. p. 921, it is said: "To the tenant, the landlord is not liable for a nuisance existing on the premises at the time when the lease was made, nor for defects therein, unless the defect is latent, and the landlord has been guilty of fraud or actual concealment or deceit in the letting."

If one knowingly lets premises infected with a contagious disease, and fails to inform the tenant thereof, he is liable for injury resulting therefrom, 18 Ency. L. 2nd ed. 224, citing *Minor* v. *Sharon,* 112 Mass. 477; *Cutter* v. *Hamlen,* 147 Mass. 471; *Cesar* v. *Karutz,* 60 N. Y. 229; *Snyder* v. *Gorden,* 46 Hun. 538; *Span* v. *Ely,* 8 Hun. 256.

The landlord on his failure to disclose concealed defects in the demised premises is liable for injuries to the family or guests of the tenant as well as for injuries directly to the tenant, *ib.,* citing *Edwards* v. *N. Y. &c. R. R. Co.,* 98 N. Y. 249; *Anderson* v. *Hayes,* 101 Wis. 538. See also *Wallace* v. *Lent,* 1 Daly (N. Y.), 481; *Blake* v. *Ranous,* 25 Ill. App. 486; *Capen* v. *Hall,* 21 R. I. 364; *Whitehead* v. *Comstock & Company,* 25 R. I. 423, 426.

If, in the case at bar, the defendant had known that the premises were infected with the germs of diphtheria, and had concealed that fact from the plaintiff, and the child immediately upon entering the house had contracted the disease, no doubt the defendant would be liable in damages.  *Snyder* v. *Gorden, supra; Cesar* v. *Karutz, supra.*  So also, if the defendant had known that the drains were in a dangerous condition and liable by ordinary use to become a source of disease before the tenants could discover that they were out of order.

The defendant does not deny that in such a case she would be responsible, but demurs because she says no such case is stated.

As we have seen above, the allegation of knowledge by the defendant's agent is not sufficient to charge the defendant with actual knowledge and fraudulent concealment so long as the relation of the agent to the defendant is not set out.  Again, the fact that at some time, not alleged to be recent, a death from diphtheria occurred in the house is no allegation that the house was infected at the time the plaintiff hired.   Evidence of such an event within a short time might tend to show knowledge of infection, but the fact which ought to be alleged is the actual knowledge, not the evidence from which it may be inferred.

The existence of foul, noxious, and unwholesome odors and the stopping up of the water-closet are facts in their nature incapable of concealment.   They must have become known as soon as the occupation of the tenement began, and the tenant had no right to continue the exposure of his family to such dangerous conditions and so aggravate the damage.

Again, it is not alleged that the child contracted diphtheria in the house, or that the alleged fault of the defendant directly caused its death.

We are unable to say whether these defects in the count may be merely errors in setting out a meritorious case; but unless they can be cured by amendment in accordance with the fact, the plaintiff has no cause of action.

It is objected, to the whole declaration, that the first count is in assumpsit, and the second in case, and hence the declara-

tion is bad for misjoinder of causes of action. This objection would be good if the first count were clearly in assumpsit; but while it is not absolutely certain how it should be classed, the pleader evidently intended to declare in tort, and we have considered it such in form, though it lacks the substance, as no legal duty is set out. We must therefore overrule this objection.

The demurrers to the several counts are sustained, for the reasons given above, and the case will be remitted to the Common Pleas Division for further proceedings.

*Wm. M. P. Bowen*, for plaintiff.

*Robert W. Burbank*, for defendant.