279 A.2d 743.

PASQUALE MONTI *vs.* MILTON LEAND.
CAROLYN LUCY MONTI, *p.a. vs.* MILTON LEAND.

JULY 16, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. These are two actions of trespass on the case for negligence.[1] One was brought by Carolyn L. Monti, then but not now a minor, who sued by her father and next friend to recover damages sustained when she was severely cut

---

[1] The Superior Court Rules of Civil Procedure took effect subsequent to the commencement of these actions and thereupon became applicable to all further proceedings in the cases including the defendant's motion in each case for summary judgment. See Super. R. Civ. P. 86.

while lowering a window in the premises leased by her employer from the defendant. The other was brought by Carolyn's father who sued in his own name to recover for the expenses incurred to effect a cure of his daughter's injury. In each case the defendant's motion for summary judgment was granted and each plaintiff appealed. While we discuss only the daughter's case, what we say with respect to it applies equally to the father's case.

It appears from the pleadings, affidavits and answers to interrogatories that plaintiff was employed by Nohel Manufacturing Corp. which leased from defendant certain premises located in the City of Providence. On June 18, 1963 at the end of the work day, she undertook the obligation of closing some of the windows in her employer's plant. Preparatory to lowering one of them, it was necessary to remove a metal screen which fitted between the sill and the bottom of the raised window. Just as she removed the screen "the window suddenly started to slam down." While she does not "remember exactly what happened then," her affidavit states that she "either instinctively grabbed for the window or when the window slammed, the glass broke." In any event her right wrist and forearm were severely cut by the broken glass, and it was to recover for those injuries that this suit was commenced.

The material facts set out in the affidavits and answers to interrogatories are not in controversy, and the only question for us, therefore, is whether the controlling law, when applied to those facts construed in the light most favorable to plaintiff, justified granting defendant's motion for summary judgment.

At the outset, plaintiff, at least by implication, recognized that the controlling law when she was injured denied a tenant and those on the leased premises with the tenant's permission the right to recover damages either in contract or in tort for personal injuries suffered as a consequence of a

landlord's failure to perform under a covenant to repair. *Davis* v. *Smith,* 26 R. I. 129, 58 A. 630.[2]

In an attempt to circumvent the *Davis* case, plaintiff relies upon the "reserved control" doctrine. That doctrine, as set forth in 2 Restatement *Torts,* §361, was accepted as the law of this state in *Allen* v. *William H. Hall Free Library,* 68 R. I. 80, 26 A.2d 751. It reads:

> "A possessor of land, who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved therein, and (b) could have made the condition safe."[3]

In an effort to show that defendant retained control of the window in question within the contemplation of the Restatement Rule, plaintiff points to two clauses of her employer's lease. One requires defendant to keep the exterior of the leased premises in good repair, and the other imposes upon plaintiff's employer the obligation "* * * to keep the interior of said premises in as good repair as they now are, * * * including the setting of glass in windows and doors * * * provided said glass is broken by Lessee or its servants * * * ." This division between landlord and tenant of the obligation to make repairs, plaintiff contends, clearly demonstrates that the parties to the lease intended that the windows, including the one which "slammed down," be consid-

---

[2]*Davis* v. *Smith, supra,* was overruled, but prospectively only, in *Rampone* v. *Wanskuck Buildings, Inc.,* 102 R. I. 30, 227 A.2d 586, decided in March, 1967, a date subsequent to the occurrence of the accident which gave rise to this litigation.

[3]Restatement (Second) *Torts,* §361 sets forth a substantially identical rule.

ered a part of the exterior of the leased premises and therefore subject to defendant's covenant to repair.

Continuing with her argument, plaintiff then uses defendant's covenant to repair as a springboard for her conclusion that defendant had reserved control of the *window* and that his reservation of *control* impliedly carried with it responsibility for the injuries which she sustained as a consequence of his failure to keep the *window* in a reasonably safe condition.

Obviously plaintiff's argument was developed to circumvent the strictures of the rule of *Davis* v. *Smith, supra.* Professor Prosser, while acknowledging the ingenuity of such an argument, nonetheless rejects plaintiff's theory that control for the purposes of making repairs is sufficient to sustain tort liability, and he says that the notion that a landlord's control of a portion of leased premises somehow inevitably and necessarily follows from his agreement to repair "is a fiction devised to meet the case." Prosser, *Torts,* (3d.ed.) §63 at 422-23.

We too reject the "fiction" that a covenant to repair in and of itself and without something more constitutes such a reservation of control as to impose upon defendant liability for the injury sustained by plaintiff. See comment, "Torts — Liability Of A Landlord For Injuries To Persons On The Premises — Covenant To Repair — Effect Of Repairs Made Under Such Covenant Subsequent to An Injury Caused By Defect Repaired," 48 Mich. L. Rev. 689 (1950).

Alternatively, plaintiff invokes the "hidden defect" doctrine. Under it a landlord is responsible to his tenant or to those on the leased premises with the tenant's permission for injuries proximately caused by a latent or hidden defect which is in existence at the time of the commencement of the letting and which is known to the landlord and unknown to the tenant.

In repudiating the "hidden defect" argument as it applies to the facts in this case we in no way denigrate the doctrine. It is settled law in this state. *Marsh* v. *Bliss Realty Inc.*, 97 R. I. 27, 31, 195 A.2d 331, 333; *Corcione* v. *Ruggieri*, 87 R. I. 182, 139 A.2d 388; *Davis* v. *Smith, supra; Whitehead* v. *Comstock & Co.*, 25 R. I. 423, 426, 56 A. 446, 447. It is inapposite, however, to the facts of this case as disclosed by the affidavits, admissions, and answers to interrogatories. Nothing we can find in those papers even remotely identifies the latent or hidden condition which plaintiff claims was responsible for her injury. To be sure, she argues in her brief in one place that the concealed defect was a "frayed or rotting window sash" and in another that it was "the defective condition of the sash cords running behind the wooden window and casing," but for purposes of summary judgment proceedings material facts are ascertained not from briefs or pleadings, but from "the affidavits, admissions, answers to interrogatories and other similar matters." *Slefkin* v. *Tarkomian*, 103 R. I. 495, 496, 238 A.2d 742, 743.

Moreover, even were we to assume that plaintiff had properly put into issue the existence or nonexistence of a hidden defect, there is still not even a hint in the pertinent papers that the causative defect was in existence at the time of the creation of the tenancy or that, if then in existence, it was known to defendant. Indeed, the contrary is the case for the defendant, responding to plaintiff's interrogatories, stated — and his statement is uncontroverted — that he was unable to recall having any notice within 18 months prior to the accident "* * * of any defective window condition, broken or cracked windows, broken or frayed sashes or sash cords, or want of repair to the same * * *" on the windows of the leased premises. Absent a genuine issue as to any of these material elements, the "hidden defect" rule is of no aid or comfort to the plaintiff.

In each case the plaintiff's appeal is overruled, and the summary judgment appealed from is sustained.

*Robert B. Corris*, for plaintiffs.

*Bruce G. Tucker*, for defendant.