(29 Misc. Rep. 351.)

### FLOOD v. HUFF.

(Supreme Court, Appellate Term. October 25, 1899.)

1. LANDLORD AND TENANT—DEFECTIVE PREMISES.

In an action by a tenant against a landlord for injuries caused by a defective stairway, the fact that prior to the accident the landlord examined the stairway does not make the question whether he could thereby have obtained reasonable knowledge of the existence of the defect which caused the accident one of fact for the jury.

2. SAME—NOTICE OF DEFECTS.

To render a landlord liable in an action for injuries to a tenant caused by a defective stairway, the landlord must have neglected, after notice or knowledge of the defect, to repair the same promptly, or, in the absence of notice or knowledge, have failed to exercise such reasonable means to ascertain it as his duty to the tenant demanded.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Mary Flood against Barbara Huff. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

August P. Wagener, for appellant.
Max Steinert, for respondent.

LEVENTRITT, J. The plaintiff, as tenant, sues the defendant, as landlord, to recover for personal injuries sustained on the premises of the latter. The house was not let to the plaintiff in its entirety, but was apparently a tenement house. There were separate

apartments occupied by different tenants, all of whom mutually used the common passageways. On the evening of April 29, 1899, at about 7 o'clock, the plaintiff descended from her rooms on the fourth floor. In stepping from the last step of the stairway leading to the landing on the second floor, the flooring under one of her feet gave way, sending her foot up to the ankle through the boards, and occasioning the injuries for which recovery is sought. The plaintiff had lived in the house since the previous September, had daily ascended and descended the stairs, but had never noticed any defect in the landing. It is conceded that there was no hole in the boards, and that none of them was loose. It is likewise conceded that no change existed in the original condition of the flooring, except an unevenness in the boards, resulting from their constant use; the plaintiff's witnesses testifying that the landing was "walked out a little," and the defendant admitting that the floor "was worn down a good deal." There is no testimony as to the dimensions of the depression, if depression there was. Both parties examined as a witness the defendant's carpenter. Called on behalf of the plaintiff, who is therefore bound by his statements, he testified that he had on several occasions made repairs on the premises; that about a week prior to the accident he had gone through the entire house with the defendant, with a view to finding out what alterations were necessary and advisable; that the defendant showed him where work was to be done, and that he himself "picked out what floors were necessary to be fixed"; that he examined the landing in question, and discovered that it was "walked out a little" near the banister, where it was most frequently passed over; that he stamped on the floor "very hard," because he was "trying to make work"; that, although he weighed 225 pounds, nothing gave way; that the defendant directed him to smooth out the unevenness, as she desired to lay oilcloth over the boards; and that he repaired this landing, as well as three others, about a week later,—that is, immediately after the accident. Called on behalf of the defendant, he further testified that the flooring was not rotten; that in his opinion, based on 13 years' experience as a carpenter, he deemed the floor perfectly safe to walk on; and that, had he considered it otherwise, he would have placed additional boards over the landing. Beyond the defendant's admission, already adverted to, that the flooring was worn, there is no testimony in the case, other than that recited, bearing on the condition of the second floor hallway.

The justice permitted the case to go to the jury on the theory that, inasmuch as the defendant had examined the floor prior to the accident, it became a question of fact for the jury to decide "whether she could on such examination have obtained reasonable knowledge of the existence of the defect which apparently caused the accident." We think this was error, and that a verdict should have been directed for the defendant. The defendant was not an insurer of the safety of the hallway, and was liable only for negligence. A duty rested on her to use reasonable care to keep the common passageways in repair, and in suitable condition for the safe passage of her tenants over them, and for failure to do so she would

have been chargeable with liability for injuries suffered by them while properly using it. McAdam, Landl. & Ten. (2d Ed.) p. 610; Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077; Looney v. McLean, 129 Mass. 33. To charge her as landlord, however, it was necessary to show that she had neglected, after having knowledge or notice of a dangerous condition in the passageway, to repair the defect with promptitude, or, if she had no such notice or knowledge, that she had omitted to use such reasonable means for ascertaining its condition and making such requisite repairs as her duty to her tenants demanded. Henkel v. Murr, 31 Hun, 28. In the case as it is presented in the record, we find no evidence of omission of duty on the part of the defendant. She could have been liable only after notice of the defect. The testimony offered by the plaintiff established the fact that she had used reasonable means and precautions to ascertain the condition of the hallway and the necessity of repair. The mere fact that change in the landing was subsequently made has no probative value. The body of the flooring may have been perfectly adequate for the purposes of travel, and yet its surface not suited to the laying of oilcloth. To hold the defendant liable on the proof would be, in effect, to hold that the mere making of the examination of the premises was an admission of the necessity for repair. The judgment must be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.