[No. 11251.   Department Two.   September 18, 1913.]

## NORMAN MESHER, *Respondent*, v. J. W. OSBORNE, *Appellant*.[1]

DEATH—WRONGFUL DEATH — RIGHT OF ACTION — SURVIVAL—STATUTES—IMPLIED REPEAL. The basis of the cause of action for wrongful death originally given by Rem. & Bal. Code, § 183, to the heirs or personal representatives of the deceased, is distinct from the basis of the cause of action given by § 184 to a father or mother for the wrongful death of a child; hence the amendment in 1909 of § 183, extending that cause of action to the "parents, sisters or minor brothers dependent" upon the deceased for support, and of § 194, extending the provision for survival of such causes to such dependents, did not impliedly repeal § 184; the one being for loss of support, and the other being for loss of service.

[1] Reported in 134 Pac. 1092.

LANDLORD AND TENANT—PREMISES—DEFECTS—INJURIES—LIABILITY. The liability of a landlord as for a tort for injury from latent defects, known to him and unknown to the tenant, does not rest upon breach of contract.

SAME—INJURY TO GUEST. The right of a guest of a tenant to recover from the landlord for injuries suffered by reason of defective premises, is in no way superior to the right of the tenant.

SAME—PREMISES—CONDITION—CAVEAT EMPTOR. In the absence of an express provision to the contrary, a tenant takes the premises as he finds them, and the maxim of *caveat emptor* applies.

SAME—CONDITION OF PREMISES—INSPECTION. In the absence of a covenant to repair, the landlord owes no duty to inspect the premises to discover latent or unknown defects.

SAME—LATENT DEFECTS—DUTY TO INSPECT. Where a landlord agrees to put the premises in repair and to keep them in repair during the term, he owes the duty to the tenant and his guests to make a reasonable inspection for concealed defects unknown to and undiscoverable by a reasonable inspection on the tenant's part; and hence is liable for the death of a child visiting the tenant, which fell into a concealed and covered cesspool, the existence of which was unknown to the tenant, and the dangerous condition of which a reasonable inspection would have disclosed.

SAME—INJURIES—EVIDENCE—GUEST OR TRESPASSER—QUESTION FOR JURY. In an action for the death of a child, which fell into a cesspool on the defendant's premises, the positive testimony of the mother that the child accompanied her on a visit to the defendant's tenant, while another witness testified that she though she did not, is sufficient to make a question for the jury as to whether the child was a visitor or a trespasser.

SAME—ACTIONS FOR INJURIES — CONTRIBUTORY NEGLIGENCE — EVIDENCE—SUFFICIENCY. In an action for the death of a child, which fell into a concealed cesspool on the defendant's premises, while on a visit to the defendant's tenant, there is no evidence of the contributory negligence of the mother in not seeing the child's danger, where she did not know of the existence of the cesspool, which was covered with boards and earth, and there was no evidence that the top fell in until the child went upon it.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 29, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Tolman & King*, for appellant.

ELLIS, J.—This action was brought by a father to recover damages for the death of his child, an infant of fifteen months, caused by its falling into a cesspool on the premises of the defendant, which were then occupied by the defendant's tenant, one Prince. The cesspool was an excavation lined and covered with boards, the top being covered over with earth and sod so as not to be discoverable on ordinary inspection of the premises. The tenant testified, that when she leased the premises from the defendant, about a month before the accident, the defendant agreed to put the premises in repair and keep them in repair as long as she occupied them, and that she had no knowledge of the existence of the cesspool and was not advised of its existence by the defendant. The defendant admitted that he did not mention the cesspool to the tenant at any time. He denied any general agreement to repair the premises, but that such an agreement was made is admitted in the appellant's brief. The evidence shows that the cesspool was relined in June, 1908, with common two-inch rough lumber furnished by the defendant, but the man who rebuilt the cesspool testified that he used some of the old planks for a part of the cover because, as he remembered it, he was not furnished quite enough new lumber. The Meshers and the Princes were intimate friends and neighbors, living at diagonally opposite corners of the same block. Mrs. Mesher and Mrs. Prince and the children of the two families visited each other nearly every day.

The mother of the deceased testified, that on the morning of November 11th, 1910, she took the deceased with her to the Prince home; that upon her arrival there she entered the kitchen, sat down with her child in her arms; that after a time she missed the child and went out to look for it, and failing to find it, went home, and not finding the child there, made inquiries from other neighbors and again at the Prince home. Finally, seeing a shawl which the child had worn on its head lying on the grass she went towards it, when the ground gave away and she also fell into the cesspool, where she found the

baby, drowned.   There was evidence that there had been wet weather for a few days prior to the accident, which is the only explanation offered of the giving way of the top of the cesspool under the weight of the child, aside from the fact, clearly shown by the evidence, that the boards covering the cesspool under the. dirt and sod were thoroughly decayed. Mrs. Prince testified that she did not remember whether on this particular morning Mrs. Mesher brought the child with her when she called or not.   She was under the impression that she did not.   There was a window in the kitchen looking out upon the lawn covering the cesspool, which was about sixteen feet from the window.   The defendant testified that he had made no examination of the cesspool to determine its condition or safety since it was reconstructed in June, 1908, and that he had no reason to suspect that the boards would rot in that length of time, since in other cases he had known boards so used to last for eight years.   At appropriate times, the defendant demurred to the complaint, objected to the introduction of any evidence, moved for a nonsuit, for a directed verdict and for judgment notwithstanding the verdict, all of which were denied.   The trial resulted in a verdict for the plaintiff in the sum of $500, from a judgment upon which the defendant appealed.

The several assignments of error present three general questions.   (1) Was a cause of action stated?   (2) If so, was the evidence sufficient to sustain the verdict?   (3) Were the parents guilty of contributory negligence?

I.   The appellant contends that the complaint stated no cause of action, and the evidence proved none, in that there was neither allegation nor proof of any dependence of the parents upon the deceased child for support.   This claim is based upon the assumption that Rem. & Bal. Code, § 184 (P. C. 81 § 17), was repealed by the amendments of 1909 contained in Rem. & Bal. Code, §§ 183, 194 (P. C. 81 §§ 15, 37).   These sections, so far as material, read as follows:

"Sec. 183.  .  .  .  When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death. *If the deceased leave no widow or issue, then his parents, sisters or minor brothers who may be dependent upon him for support and who are resident within the United States at the time of his death, may maintain said action.*  .  .  ."

"Sec. 194. No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine, by reason of such death, if he have a wife or child living, *or leaving no wife or issue, if he have dependent upon him for support and resident within the United States at the time of his death, parents, sisters or minor brothers;* but such action may be prosecuted, or commenced and prosecuted, in favor of such wife or in favor of the wife and children, *or if no wife, in favor of such child or children, or if no wife or child or children, then in favor of his parents, sisters or minor brothers who may be dependent upon him for support, and resident in the United States at the time of his death.*"

"Sec. 184. A father or in case of the death or desertion of his family the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward."

The parts which we have italicized were inserted by the amendment of 1909, Laws 1909, pp. 425, 566. If an action for wrongful death can be maintained at all, in the absence of allegation and proof of dependence, it must be under the provisions of § 184. *Kanton v. Kelley*, 65 Wash. 614, 118 Pac. 890, 121 Pac. 833. Was this section repealed by the amendment of the other two sections? We think not. If there is any repeal, it rests in implication. Repeals by implication are not favored and will only be indulged where the implication is a necessary one, that is, where without an implied repeal of the earlier act there would exist an inharmony in the body of the law irreconcilable on any conceivable theory reasonably compatible with the purpose of the later act. 1 Lewis' Sutherland, Statutory Construction (2d ed.), pp. 465,

466, 467. A reasonable construction of the sections quoted develops no conflict irreconcilable or otherwise. The original § 183 gave a cause of action for wrongful death to the heirs or personal representatives of the deceased. The amendment of 1909 extended that cause of action to "parents, sisters or minor brothers dependent upon him for support, and resident within the United States." The cause of action so given is not limited by the age of the deceased, but only by the fact of dependence. The amendment in § 194 extends the survival of such actions for wrongful death to the cases of dependency added by the amendment in § 183. Such is the only obvious purpose of these amendments, and in order to find a repugnancy of any kind between them and § 184, we must reverse every rule of construction and raise a conflict by the unnecessary and impossible implication that these amendments apply to actions for wrongful death accorded by § 184 to parents and guardians only and for the death of minor children alone.

The basis of the causes of actions given by the two sections 183 and 184, are distinct. The first as amended rests upon a loss of support by a person wholly or partially dependent; the second rests upon a loss of the common law right of a parent to the service of his children during minority, which is extended by this section to a recovery for loss of such services after the wrongful death of the child and during what would have been its minority. An amendment of the one can have no possible relation to the other, since, before the amendment, the two sections had separate and distinct scopes and purposes. We have held that the original § 183, though subsequently passed, did not repeal § 184, because each had an independent scope and purpose. *Hedrick v. Ilwaco R. & Nav. Co.*, 4 Wash. 400, 30 Pac. 714. Obviously these distinct purposes are extended and emphasized rather than abrogated by the amendment of § 183 by the act of 1909. If, as appellant claims, there is anything said in our opinion in *Kanton v. Kelly, supra*, sustaining the other view, it was not so intended.

We there referred to the *Hedrick* case but did not overrule or modify it. On the contrary, the opinion on rehearing in *Kanton v. Kelly* distinctly recognizes the independent basis of the separate causes of action given by the two sections. That opinion, when read with discrimination, holds that a dependent parent, suing for wrongful death of a minor child, has a choice of actions between that conferred by § 183 as amended and § 184, but that the proof required would be different and that the measure of recovery would not be the same. One would rest in loss of support, the other in loss of service. The complaint stated a cause of action.

II. Was the evidence sufficient to establish a cause of action? A condensation of the lengthy complaint develops the following charges of negligence: (a) Failure to have the premises in repair and free from concealed defects at the time of the letting to the tenant Prince; (b) failure to repair after the letting; (c) failure to disclose a concealed defect existing at the time of the letting, of which, it is alleged, the appellant had knowledge and the tenant was ignorant. Coupled with these charges, were allegations that neither the tenant nor the respondent had, or by exercise of reasonable care could have had, any knowledge of the defect; that the appellant expressly agreed to put in repair and keep in repair the leased premises during the continuation of the lease, and that he knew, and it was his duty to know, that the cesspool was out of repair, dangerous and unsafe. In considering the issue of negligence, it may be well to point out certain general principles which must be borne in mind throughout the whole discussion.

(1) The liability of the landlord, as for a tort for injury resulting from latent or obscure defects, known to him and unknown to the tenant, arises from a breach of duty distinct from a mere breach of contract. A mere breach of contract does not usually create a liability as for negligence. The liability as for negligence must arise either from a breach of some general duty arising as a legal incident to the relation

of landlord and tenant created by the contract, or from the negligent performance or negligent failure to perform some general duty imposed upon the landlord by the contract. A mere breach of contract, in the absence of some general duty, gives no basis for an action in tort. *Davis v. Smith*, 26 R. I. 129, 58 Atl. 630, 106 Am. St. 691, 66 L. R. A. 478; *Howard v. Washington Water Power Co.*, *ante* p. 255, 134 Pac. 927. It does not follow that where there is a breach of contract there can never be a liability in tort, as expressions in some of the earlier cases would seem to imply. Where there is a general duty, even though it arises from the relation created by or from the terms of the contract, and that duty is violated, either by negligent performance or negligent nonperformance, a landlord may be held as for a tort. Between landlord and tenant, as in other relations, there is always the general duty to so use one's own as not to injure another. *Fowler Cycle Works v. Fraser & Chalmers*, 110 Ill. App. 126.

(2) There is another general principle which further narrows the discussion. The tenant's guest, like his servant, is usually held to be so identified with the tenant that his right of recovery for injury as against the landlord is the same as that of the tenant would be had he suffered the injury. The guest cannot be regarded as possessing the independent rights of a stranger. His right of recovery is in no way superior to that of the tenant. 24 Cyc. 1119; *McKenzie v. Cheetham*, 83 Me. 543, 22 Atl. 469; *Baker v. Moeller*, 52 Wash. 605, 101 Pac. 231.

(3) It is a general principle that, in the absence of express contract to the contrary, a tenant takes the demised premises as he finds them and there is no implied warranty by the landlord that they are safe or fit for the purpose for which they are hired. The maxim *caveat emptor* applies. 3 Shearman & Redfield, Negligence (6th ed.), § 709; *Baker v. Moeller, supra*.

(4) To the general rule of the landlord's nonliability for injury from defects, there is the well recognized exception that, even in the absence of warranty or express agreement by the landlord to repair, he is liable to the tenant or the tenant's guest as for a tort, where, with actual knowledge of obscure defects or dangers at the time of the letting, he lets the premises without disclosing such defects to a tenant who does not know, and by the exercise of reasonable care would not discover, them. The duty to disclose such latent defects and dangers when actually known to the landlord exists without regard to any covenant or lack of covenant to repair. But in the absence of such covenant, there is no duty of inspection on the landlord's part to discover latent and unknown defects. 3 Shearman & Redfield, Negligence (6th ed.), § 709; *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778; *Cowen v. Sunderland*, 145 Mass. 363, 14 N. E. 117, 1 Am. St. 469; *Coke v. Gutkese*, 80 Ky. 598, 44 Am. Rep. 499; *Martin v. Richards*, 155 Mass. 381, 29 N. E. 591; *Anderson v. Hayes*, 101 Wis. 538, 77 N. W. 891, 70 Am. St. 930; *Edwards v. New York & H. R. Co.*, 98 N. Y. 245, 50 Am. Rep. 659; *Kern v. Myll*, 80 Mich. 525, 45 N. W. 587, 8 L. R. A. 682; *Howard v. Washington Water Power Co.*, *supra*.

(5) Whether the landlord is ever liable in tort for injuries to the tenant or his guest arising solely from his breach of covenant to repair, where the complete possession is turned over to the tenant, is a question upon which the authorities are hopelessly divided. Many courts, perhaps the more numerous, tend to the view that there is no such liability, and that the tenant is remitted to his action on the contract and cannot recover for personal injuries, because they are too remote to have been within the contemplation of the parties to the contract when it was made. *Dustin v. Curtis*, 74 N. H. 266, 67 Atl. 220, 11 L. R. A. (N. S.) 504, and cases cited in note; *Tuttle v. Gilbert Mfg. Co.*, 145 Mass. 169, 13 N. E. 465. In some jurisdictions it is held that

where he so covenants there is an affirmative duty on the landlord to repair defects existing at the time of the lease, the failure to observe which is negligence giving ground for action for personal injuries caused thereby to any one lawfully on the premises. In such a case, the lease is a mere matter of inducement, material only as determining the negligence and as determining that the plaintiff was lawfully on the premises, the action being in tort. *Moore v. Steljes*, 69 Fed. 518; *Schoppel v. Daly*, 112 La. 201, 36 South. 322; *Barron v. Liedloff*, 95 Minn. 474, 104 N. W. 289. Other cases hold that no action will lie as for negligence until reasonable notice to the landlord of the defect, even in case of covenant to repair. *Thompson v. Clemens*, 96 Md. 196, 53 Atl. 919, 60 L. R. A. 580; *Flood v. Huff*, 29 Misc. Rep. 351, 60 N. Y. Supp. 517. A carefully compiled and discriminating text, after noting the hopeless conflict of the authorities and the hair-splitting distinctions indulged by some of the courts, uses the following language:

"The law on the subject is in a state of transition. In some of the earlier cases holding that an action of tort did not arise on a breach of the covenant in the case presented, the general expressions used would include the proposition that no such action could arise. But, it is believed, that, restricting those cases to the issue presented, there is nothing to exclude general harmony on the proposition where there is a covenant by the landlord to keep the premises in safe and tenantable condition, and the landlord has knowledge or notice of the existence of such defects as renders the use of the property in the manner contemplated by the lease dangerous to the tenant, and the tenant, his guests or family, suffer personal injury therefrom after a reasonable time for making the premises safe, since such notice or knowledge, in the absence of contributory negligence, the landlord is liable in an action of tort therefor. In those jurisdictions where damages for personal injuries are held recoverable against the landlord for injuries caused by the want of repairs he had agreed to make, and of the necessity of which he had been notified, it is said that the nature of the covenant is such as naturally to create a reasonable anticipation that the

neglect to perform it will probably be the cause of personal injuries being inflicted on the tenant, his guests, family and servants; that the covenant gives rise to a corresponding duty either to exercise such supervision as may be necessary, or to act with requisite promptness on notice, as the case may require, and that an action of tort is maintainable for the injury consequent on the neglect to perform it, the covenant being set up as a matter of inducement. . . ." 3 Shearman & Redfield, Negligence (6th ed.), § 708a.

The question here presented is thus finally reduced to the inquiry. whether a landlord who covenants to repair is affected with notice of defects existing at the time of the letting, of which he did not know but which a reasonable inspection on his part at that time would have disclosed. Whether the appellant here can be held liable as for negligence must depend upon the answer to this inquiry.

As we have seen, in the absence of an agreement to repair, the landlord is under no legal duty to search for concealed defects of which he has no knowledge. The duty of inspection in such cases is upon the prospective tenant. The cases so holding, however, nearly all mention the lack of an agreement to repair as a material circumstance relieving the landlord from the duty of inspection. Where the landlord agrees to put the premises in repair and keep them in repair during the tenancy, it would seem that there ought to arise a positive duty on his part before relinquishing possession to the tenant to make reasonable inspection of the premises for concealed defects, unknown to and undiscoverable by a reasonable inspection on the tenant's part, which might render the premises dangerous to the tenant, his family, servants and guests. In such a case, as it seems to us, the landlord ought to be held to a more careful inspection than the tenant, because the duty to repair is upon the landlord and his presumed knowledge of his own premises would make a discovery by him of concealed defects and dangers more probable. Such a rule would seem to be only a just application

15—75 WASH.

of the maxim to which we have adverted, that there is always a positive duty to exercise reasonable care to so use one's own property as not to injure another. We have been favored with no brief for the respondent, and by such a search as the limited time at our disposal permits, we have found no case distinctly so holding, except the following decisions by the supreme court of Tennessee. *Hines v. Willcox*, 96 Tenn. 148, 33 S. W. 914, 34 S. W. 420, 54 Am. St. 823, 34 L. R. A. 824; *Willcox v. Hines*, 100 Tenn. 538, 46 S. W. 297, 66 Am. St. 770, 41 L. R. A. 278; *Stenberg v. Willcox*, 96 Tenn. 163, 33 S. W. 917, 34 L. R. A. 615.

These decisions extend the positive duty of inspection by the landlord even to cases where he has not agreed to repair, and though we have expressed a doubt as to their soundness in such cases (*Howard v. Washington Water Power Co., supra*), we think the rule they announced is on principle sound as applied to cases where the landlord has agreed to put and keep the premises in repair. In such a case, it seems unreasonable to say that the tenant assumed the risks of concealed defects of which he had no knowledge, and by a reasonable inspection could not discover, and which he did not agree to repair, while the landlord has agreed to make all necessary repairs. The duty of the landlord to inspect with a view to repair, or at least to disclose where he has agreed to repair, seems closely analogous to the same duty as applied to the master respecting concealed defects in appliances or place of work in the relation of master and servant. That relation also arises out of contract, but it has never been held that the servant, in case of injury from such concealed defects, necessarily assumes the risk and is remitted to his contract and cannot sue in tort. The supreme court of Kentucky has held the landlord liable in tort for failure to repair an open defect known to both parties, on the ground that the landlord's promise to repair absolved the tenant from an assumption of risk, noting the analogy to the relation of master and servant to which we have referred. *Stillwell v.*

*South Louisville Land Co.*, 22 Ky. Law 785, 58 S. W. 696, 52 L. R. A. 325.

On reason we are constrained to hold that where the landlord, as in this case, agreed to put and keep the premises in repair, there arose the antecedent duty to inspect the premises for concealed dangers and either remove them or notify the tenant of their existence that he might either decline the tenancy or guard against the dangers. The appellant should be held to know what a reasonable inspection on his part would have discovered. As in other cases of negligence, whether he would have discovered the defect by a reasonable inspection was a question for the jury on the evidence. The trial court correctly so instructed.

III.   The other questions raised, whether the child was a trespasser and whether the mother was guilty of contributory negligence, rest upon the conflict in evidence as to whether the mother took the child with her on the visit or not. The only positive testimony on the subject is that of the mother that she did. Mrs. Prince, though not able to remember, thought that she did not. On this conflict the question was clearly one for the jury. The further claim that the mother was guilty of contributory negligence, as a matter of law, in not seeing the child's danger, because the cesspool was in front of the kitchen window near which she sat, is without merit. She did not know of the existence of the cesspool, and there is no evidence whatever that the top fell in before the child went upon it. In fact, the only reasonable inference from the evidence is to the contrary. It was for the jury to say whether, in the absence of such knowledge, the mother was negligent in allowing the child to play in the yard unattended. On the law as we view it, the case was submitted to the jury on proper instructions.

The judgment is affirmed.

Crow, C. J., Fullerton, and Main, JJ., concur.