ROSS et al. v. HANER. (No. 497–3897.) *

(Commission of Appeals of Texas, Section A. Feb. 27, 1924.)

**1. Landlord and tenant ⬅️150(1)—Landlord under no obligation to repair leased premises.**

The mere relation of landlord and tenant creates no obligation on the part of the landlord to repair or keep in repair the leased premises.

**2. Landlord and tenant ⬅️164(2)—Landlord held liable for injuries to tenant's child caused by failure to make repair for protection of child.**

Where a landlord made an agreement to place catch on window screen in order to keep tenant's child from falling out of window, with full knowledge that the repair was to be made for the protection of the child, and induced the tenants to believe that they had complied with the agreement, the landlord was liable for injuries to the child sustained in falling out of the window because of the landlord's failure to comply with his agreement.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Thomas E. Haner, by Viola Petrie as next friend, against Mrs. Ellen B. Ross and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (244 S. W. 231), and defendants bring error. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for plaintiffs in error.

Presley K. Ewing and Ewing Werlein, both of Houston, for defendant in error.

BISHOP, J. Defendant in error, Thomas E. Haner, a minor seven years of age, fell from a window on the third floor of an apartment building on August 15, 1919, and as a result was seriously injured. He is the son of Viola Petrie and the stepson of her husband, Sidney B. Petrie. The Petries rented from plaintiffs in error apartment No. 36 on the third floor of this building from July 1, 1919, to October 1, 1919, and occupied same as their residence. As a part of the rental contract plaintiffs in error, the owners of the building, for valuable consideration, agreed to make certain repairs in the apartment, including the repair of the window screen attached to the window from which defendant in error fell. This screen was hung from the top of the window, and had no latch to hold it at the bottom, and a slight pressure would cause it to swing out. The agreement was to supply a latch which would fasten the screen to the window, and which could have been done at a small cost. While discussing the agreement to rent the apartment, and having in mind the danger of her son falling through this window, Mrs. Petrie advised plaintiffs in error that he would live with them in the apartment; that she and her husband were both working, and her son would be left at the apartment under the care of a servant. Plaintiffs in error made all repairs under their rental agreement, except that of placing a latch on the screen, which they did not do. The parents relied on the promise of plaintiffs in error to place the fastening on the screen. They occupied the apartment believing that this had been done until six or eight days prior to the injury, when Mrs. Petrie, in cleaning the apartment, discovered the repair had not been made. She at once notified plaintiffs in error of this, and they advised her that they too thought the repair had been made, and assured her that they would have it attended to at once. The Petries, relying on this promise, did not know the fastening had not been placed on the screen until after defendant in error fell and was injured. Thinking the servant, under whose care they intended to leave the defendant in error, would come within a short while, the mother and stepfather went to their work, and left him asleep. The servant failed to come. The boy went to the window to look out. He placed his head against the screen, which came open, and he fell.

In the trial court the jury found that the continued existence of this defect in the screen was due to negligence on the part of plaintiffs in error, which was a proximate cause of the injury; that defendant in error was not guilty of contributory negligence; and that he was injured in the sum of $22,500. From the judgment of the trial court in this sum the plaintiffs in error appealed, and the Court of Civil Appeals affirmed the judgment. 244 S. W. 231.

The Court of Civil Appeals found the following facts which are supported by evidence, to wit:

"Now in this case, the very purpose of the Petries in contracting to have the screen repaired was the prevention of danger to appellee. Appellants undertook to repair the screen primarily for the benefit and protection of appellee. Both parties understood the purpose of the contract and the probable consequences of its breach or of a negligent failure to execute it."

Here we have a contract in which the landlords have bound themselves for a sufficient consideration to make specific repairs, one of which was the placing of a catch on the screen. Both the trial court and the Court of Civil Appeals have found as a fact that the last-named repair was for the protection of this child from falling from this window; that the Petries insisted upon this repair for this purpose; that plaintiffs in error knew the purpose for which the tenants insisted on having the catch placed on this screen; and that both landlords and tenants had in contemplation, in case this contract was not

complied with, this, or some like injury, might be sustained by defendant in error.

Plaintiffs in error announce the proposition that a landlord's promise to repair, made as a part of his tenancy contract with his tenant for a valid consideration, binding the landlord to make the specific repair promised, cannot give rise to an obligation on the part of the landlord for safety if breached, and such breach proximately causes injury to the tenant or a member of his family. Defendant in error contends that where the landlord, for a valuable consideration, and as part of the contract of tenancy, agrees to make a specific repair to avert a condition of apparent danger, and fails through negligence to make such repair, which is a proximate cause of injury to the tenant's infant child, he is liable for such injury, where it is clear that the safety of the child was within the mutual contemplation of the parties, and was the purpose for which the promise of repair was required and made.

[1] The mere relation of landlord and tenant creates no obligation on the part of the landlord to repair or keep in repair the leased premises. The tenant takes the premises as he finds them. On the question as to whether a landlord can be held liable for personal injuries resulting from a breach of his contract to repair, or to keep in repair the rented premises, the courts of this country are in hopeless conflict. In those jurisdictions in which it is held that no such liability exists most of the courts assign as a reason therefor that such damages are too remote and not in the contemplation of the parties at the time the contract was made. Others lay down the rule that a tort as for negligence cannot be based upon mere breach of a contract, and that, as there is no obligation on the part of the landlord to repair in the absence of a contract, the obligation necessarily arises from the contract alone. From this they reason that, had the law imposed the duty on the landlord to make the repairs and he negligently failed to do so, he would be liable for personal injury resulting therefrom, if such injury might reasonably have been anticipated as a result of such negligent failure. They hold that, where the duty is imposed by law, liability may result, but, if this duty is assumed by contract, there is no liability; that while the duty is the same, whether imposed by law or assumed by contract, the liability is different. In other jurisdictions it is held that, when such contract amounts to a covenant to keep the premises reasonably safe, or where the contract to repair is made under such circumstances as plainly to indicate that such injuries are contemplated by the parties at the time the contract is made, the landlord would be held liable for his negligent failure to comply with its terms.

The case of Murrell v. Crawford et al., 102 Kan. 118, 169 Pac. 561, was an action by a tenant against the landlord and his agent for injuries sustained by falling through the floor of a front porch by reason of its rotten and defective condition. The evidence shows that, after the plaintiff examined the house with a view of renting it, she told the agent that the porch needed repairing; that when she went to pay the first month's rent she told him she would take the house if he would repair it, which he agreed to do; that after living in the house and using the porch for five months she fell through the porch floor and was injured. There was no evidence to indicate that at the time of the agreement to repair it was contemplated that personal injury might result from a failure to comply with such agreement. The Supreme Court of Kansas in its opinion says:

"But personal injuries are almost uniformly considered by the courts to be too remote to be included in an action for breach of covenant to repair. Loss of life or limb is not a natural and probable consequence which ordinarily and reasonably could be anticipated from a breach of covenant to make repairs on a dwelling house. This is the doctrine of practically all the text-books, and it is supported by a plethora of decisions. Miller v. Sullivan, 77 Kan. 252, 94 Pac. 266, 16 L. R. A. (N. S.) 737, 15 Ann. Cas. 561; Anderson v. Robinson, 182 Ala. 615, 62 South. 512, 47 L. R. A. (N. S.) 330, Ann. Cas. 1915D, 829; Dustin v. Curtis, 74 N. H. 266, 67 Atl. 220, 11 L. R. A. (N. S.) 504, 13 Ann. Cas. 169; Davis v. Smith, 26 R. I. 129, 58 Atl. 630, 66 L. R. A. 478, 106 Am. St. Rep. 691, 3 Ann Cas. 832; Thompson v. Clemens, 96 Md. 196, 53 Atl. 919, 60 L. R. A. 580; 18 A. & E. Ency. of Law, 234; 16 R. C. L. 1059; 3 Joyce on Damages, 1942; Jones on Landlord and Tenant, §§ 592, 675; 2 McAdam on Landlord and Tenant [§ 386] 1316; 1 Tiffany, Landlord and Tenant [§§ 86, 87], 574, 592; 2 Underhill on Landlord and Tenant, 859. See, also, notes in 11 L. R. A. (N. S.) 504; 34 L. R. A. (N. S.) 804; 48 L. R. A. (N. S.) 971."

In the case of Stillwell's Adm'r v. South Louisville Land Co., 58 S. W. 696, 52 L. R. A. 325, in an action to recover damages for the death of an infant son of a tenant caused by his falling into an open and unprotected cistern on the property of the landlord, occupied by the tenant and his family as a residence, the Court of Appeals of Kentucky held a petition to state a cause of action which alleged:

"At the time of the rent contract there was on the premises a dangerous, open, unprotected cistern, containing a large quantity of water; that, to induce appellant to move onto and take possession of the premises, the appellee promised and agreed to immediately repair the cistern, and make it safe and secure, and free from danger to the family of appellant. It is alleged that, after he took possession, this promise to repair was repeated frequently, and that it was not done, and that the child, Clarence J. Stillwell, an infant four years old, fell into same, and was drowned, for which damages are here sought."

The case of Dice's Adm'r v. Zweigart's Adm'r, 161 Ky. 646, 171 S. W. 195, L. R. A. 1916F, 1155, is one in which a cistern on the premises was covered with a board with a 25 or 30 pound rock placed thereon. Some one removed the board and rock, and a five year old child fell therein and was killed. In this case the same court held that the landlord was not liable on his agreement to repair. After stating that this was not an "open, unguarded, and uncovered cistern," the court says:

"The only question to be considered, therefore, is whether or not the landlord under these circumstances is liable in damages for personal injuries received by a member of his tenant's family. The child in this case was not on the premises by invitation of the landlord. He was there by virtue of the relation which he sustained as a member of the tenant's family. If there be any liability, therefore, it grows out of that relation; and if the landlord be not liable to the tenant under the same circumstances, he is not liable to a member of the tenant's family. Ordinarily, of course, the landlord is not under a duty to use ordinary care to furnish a tenant reasonably safe premises in which to live. The tenant takes the premises as he finds them. As to him the doctrine of caveat emptor applies. Here the dangerous condition was known to the tenant. The law imposed no duty on the landlord to repair the premises, and no liability for personal injuries growing out of the defective condition of the premises. It is difficult to perceive upon what theory a mere agreement to repair could impose a liability not imposed by law. Of course, cases may arise where a legal duty arises from a contractual relation, and for a breach thereof an action of tort will lie; but such a case is altogether different from a duty entirely dependent upon a contract in which it is assumed. Where an ordinary contract is violated, the damages are limited to such as are within the reasonable contemplation of the parties. Manifestly, if a third party agreed to repair the cistern, there would be no liability for personal injuries growing out of the failure to repair. Since the duty of the landlord to repair does not grow out of the legal relation existing between him and the tenant, his agreement and failure to repair should subject him to no greater liability than a third party, who had violated his agreement to repair; for such consequences are no more within the contemplation of the parties in the one case than in the other."

In the case of Spinks v. Asp et al., 192 Ky. 550, 234 S. W. 14, in which the evidence was in many respects similar to the facts alleged in the case of Stillwell v. So. Louisville Land Co., supra, the court overruled its former holding, and says:

"It could not have been in the contemplation of the parties, landlord and tenant, that the landlord would be responsible to the tenant for any injury to the person which might result to the tenant from a failure to repair the kitchen floor of the premises which both knew were defective and dangerous. All that could have been anticipated by either party was an obligation on the part of the landlord to make the floor sufficiently strong for use by the tenant as a housekeeper, and the tenant has the right, under such agreement, when the landlord failed to carry it out, to make such repairs as were needed and charge the same to the landlord, taking it out of the rent or otherwise collecting the cost of such repairs. The tenant, after making such repairs, might have maintained an action for the reasonable cost thereof. This mere breach of contract by the landlord to make repairs of a tenement does not entail upon the landlord all the consequences which might flow directly and indirectly from such failure any more than the failure of any other obligee in a contract to perform his undertaking. If one promise to pay a given sum of money at a given time and failed to make such payment, the payee may have an action for the sum due, but not for the loss which the payee suffered by reason of not having the money with which to make investments which offered large gains, because such consequences were not reasonably in contemplation of the parties to the contract at the time it was made, and are entirely too remote and conjectural to be the basis of an action at law. So in a contract between a landlord and tenant the agreement to make repairs of a defect in a floor, as in the instant case, can entail upon the landlord no consequences which do not naturally and proximately flow from a breach of contract independently of the tort which results in personal injury if any there be. In the case of Dice's Adm'r v. Zweigart's Adm'r, 161 Ky. 651, 171 S. W. 195, we copied from the case of Anderson v. Robinson, 182 Ala. 615, 62 South, 512, decided by the Supreme Court of Alabama and reported in 47 L. R. A. (N. S.) 330, Ann. Cas. 1915D, 829, where it was said:

"'It seems from the great weight of authority that said covenant does not increase the liability of the landlord, or change the rule above set forth as to his liability in tort to the tenant, his family, servants, or guests for injuries caused by virtue of defects in the rented premises. In other words, it seems settled by the weight of authority that the landlord is not liable in tort for injuries to said class, whether there be a covenant to repair or not, unless the defects existed at the time of the letting were known to him, and which he concealed from the tenant.'"

The case of Dustin v. Curtis, 74 N. H. 266, 67 Atl. 220, 11 L. R. A. (N. S.) 504, 13 Ann. Cas. 169, lays down the following rule:

"In accordance with the foregoing authorities, it may be stated as a principle of law that where the only relation between the parties is contractual, the liability of one to the other in an action of tort for negligence must be based upon some positive duty which the law imposes because of the relationship, or because of the negligent manner in which some act which the contract provides for is done, and that the mere violation of a contract, where there is no general duty, is not the basis of such an action. This being so, and the relation between the parties to this suit being that of landlord and tenant, and it having been decided in Towne v. Thompson, 68 N. H. 317 [44 Atl. 492, 46 L. R. A. 478], that no duty is

imposed by law upon a landlord to make repairs upon leased premises for the benefit of his tenant or a member of the tenant's family, it follows that the present action cannot be maintained because of the mere failure of the defendant to keep her agreement to repair. In fact it is generally held that a tenant, a member of his family, or his guest, cannot sue a landlord in tort for personal injuries due to his omission to repair premises which have passed into the possession and control of the tenant, even if the landlord has agreed to make repairs."

See, also: Collins v. Karatopsky, 36 Ark. 316; Hanson v. Cruse, 155 Ind. 176, 57 N. E. 904; Hedekin v. Gillespie, 33 Ind. App. 650, 72 N. E. 143; Shackford v. Coffin, 95 Me. 69, 49 Atl. 57; Davis v. Smith, 26 R. I. 129, 58 Atl. 630, 66 L. R. A. 479, 106 Am. St. Rep. 691, 3 Ann. Cas. 832; Sanders v. Smith, 5 Misc. Rep. 1, 25 N. Y. Supp. 125; Folsom v. Parker, 31 Misc. Rep. 348, 64 N. Y. Supp. 263; Kabus v. Frost, 50 N. Y. Super. Ct. 72; Flynn v. Hattson, 43 How. Prac. (N. Y.) 343; Spellman v. Bannigan, 36 Hun (N. Y.) 174; Schick v. Felischauer, 26 App. Div. 210, 49 N. Y. Supp. 962; Sherlock v. Rushmore, 99 App. Div. 598, 91 N. Y. Supp. 152; Boden v. Scholtz, 101 App. Div. 1, 91 N. Y. Supp. 437; Kushes v. Ginsberg, 99 App. Div. 417, 91 N. Y. Supp. 216; Stelz v. Van Dusen, 93 App. Div. 398, 87 N. Y. Supp. 716; Frank v. Mandel, 76 App. Div. 413, 78 N. Y. Supp. 855; Brown v. Toronto General Hospital, 23 Ont. 599; Thompson v. Clemens, 96 Md. 196, 53 Atl. 919, 60 L. R. A. 581; Reame v. Taylor, 31 Utah, 288, 87 Pac. 1089, 8 L. R. A. (N. S.) 436, 120 Am. St. Rep. 930, 11 Ann. Cas. 51; Cromwell v. Allen, 151 Ill. App. 404; Miles v. Janvrin, 196 Mass. 431, 82 N. E. 708, 13 L. R. A. (N. S.) 378, 124 Am. St. Rep. 575; Marcheck v. Klute, 133 Mo. App. 280, 113 S. W. 654; Kushes v. Ginsberg, 188 N. Y. 630, 81 N. E. 1168, affirming 99 App. Div. 417, 91 N. Y. Supp. 216; Schiff v. Pottlitzer, 51 Misc. Rep. 611, 101 N. Y. Supp. 249; Goetchius v. Gale, 57 Misc. Rep. 192, 108 N. Y. Supp. 1079; Cuilhe v. Ackerman, 58 Misc. Rep. 538, 109 N. Y. Supp. 714; Parbridge v. Dykins, 28 Okl. 54, 113 Pac. 928, 37 L. R. A. (N. S.) 984.

Jones, in his work on Landlord and Tenant, § 592, says:

" 'The landlord's responsibility for damages caused by his failure to perform his contract to repair rests altogether upon his breach of contract. It may be stated as a general rule that a landlord who has covenanted to repair is not liable in tort for personal injuries resulting from the want of repair. Such injuries are too remote to be recovered as damages for breach of contract, and the duties arising from the relation of landlord and tenant are not increased by such a contract in respect to the duty of the landlord to provide for the personal safety of the tenant. On principle, the landlord, who has contracted to make repairs that he is not otherwise under obligation to make, should be held to exactly the same liability that a stranger-contractor would incur. Damages for personal injuries resulting from the mere breach of such a contract must be deemed to be too remote and not within the contemplation of the parties at the time the contract was made.' Continuing in the same section he says: 'Where injuries under such circumstances were admittedly too remote to be recovered in an action of contract, it was claimed they could be recovered in an action of tort. But to permit a recovery for such damages, based on contract simply because it is in the form of an action of tort, would be making a distinction that could not be justified by reason or authority. There must be something more than a mere failure on the part of the landlord to make the repairs he has agreed to make. It makes no difference whether the form of the action is ex delicto or ex contractu, the real and substantial gravamen of the complaint is the alleged breach of contract, and in such a case the same law is applicable to both classes of action. A landlord, under contract to repair, may, under some circumstances, be liable for damages for personal injuries by reason of a negligent failure to make repairs; but in such case his negligence must be firmly established as a basis for the liability."

After quoting the foregoing in the case of Cromwell v. Allen, 151 Ill. App. at page 408, the court says:

"What special circumstances would render the landlord liable to his tenant for personal injuries received in consequence of a breach of a contract to make repairs is not stated by Mr. Jones. On principle we would say that there can be no such liability unless the covenant to repair amounts to a covenant to keep the premises reasonably safe; or unless the contract was made under such circumstances as plainly indicated that such damages were contemplated by the parties at the time of making the contract; or unless there is some duty resting on the landlord to make the repairs not arising from the contract. The weight of the authorities is decidedly against such a recovery, except under such special circumstances above named."

The foregoing cited authorities are some of the numerous ones relied on by plaintiffs in error to sustain their proposition that they cannot legally be held liable for personal injuries sustained by defendant in error resulting from the breach of their contract to place a catch on this window screen. The reason given that at the time the contract to repair was entered into it was not contemplated by the parties thereto that personal injury would result from its breach by plaintiff in error is not applicable to this case. The evidence here clearly shows that the parties to the contract understood at the time that this specific repair was for the purpose of preventing an injury to this child, which would result from its falling from this window.

In the case of Sanger v. Smith, 135 S. W. 189, by the Court of Civil Appeals of the

Fifth Supreme Judicial District, in which a writ of error was refused, for damages to goods from a leaky roof by a tenant against the landlord, and in which the basis of liability was a promise to repair, it was held that the tenant. was entitled to full compensation for damages to the goods. See, also, Lovejoy v. Townsend, 25 Tex. Civ. App. 385, 61 S. W. 331. In Tiffany's Landlord and Tenant, vol. 1, p. 596, it is said:

"No distinction can, it is conceived, be taken between the case of injury to the person of a tenant or one of his family, and injury to his chattels on the premises, and these cases may be considered as equivalent to decisions that he would be liable for such personal injuries as result from his failure to perform his contract."

Discussing the right of a tenant to recover for personal injury sustained by reason of her falling through a porch floor under an agreement by the landlord to repair, the Supreme Court of Alabama, in Hart v. Coleman, 201 Ala. 345, 78 South. 201, L. R. A. 1918E, 213, says:

"Here the tenant was in the occupancy of the house—the porch to which was in an unsafe condition and badly in need of repair just at the place where one would enter the room of the house. The tenant according to the evidence, had frequently requested the repairs to be made, and the landlord, if the tenant is to be believed, had often promised to do so. The landlord was not only informed of its unsafe condition, but admitted in his testimony the necessity for repairs on the porch, and that he knew of the same, for he had seen it himself when he went to collect the rents. The tenant had informed him that unless it was fixed she would no longer occupy the premises. It is difficult to conceive that the parties could have had in mind at the time of the agreement to repair any other injuries or damages save those resulting to the person of the tenant by falling through the porch, just as, in fact, did happen. As was said in Culver v. Hill, supra [68 Ala. 66], 'protection was its object, and it was that the parties had in contemplation.'

"We have therefore a situation which presents a case 'out of the ordinary,' as said in Cromwell v. Allen, supra [151 Ill. App. 404], where the very facts and circumstances surrounding the parties all clearly indicate that the injuries suffered were just such as they had in contemplation at the time. Such being the case, no reason appears why these damages are not recoverable in the action ex contractu. We are of the opinion there is nothing in the action of the court of which the appellant can complain. As previously stated, much has been written upon this subject, and the books abound with conflicting views, slight circumstances at times determining the result."

The rule as to liability of the landlord for personal injuries under his agreement to repair is stated by the Court of Appeals of Maryland in the case of Robinson v. Heil, 128 Md. 645, 98 Atl. 195, as follows:

"There is much diversity of opinions in other jurisdictions upon the question as to the right of the tenant or a member of his family to maintain an action of tort upon the landlord's agreement to repair. But in this state it is settled: First, that an action of tort cannot be maintained by a tenant against his landlord for personal injuries sustained by reason of his landlord's mere failure or mere breach of his agreement to repair, but that such an action will lie for the negligent failure of the landlord to make the repairs agreed upon where it is shown that injury to the tenant has resulted from such failure; and, secondly, that the liability of the landlord to a member of the tenant's family for personal injuries resulting from such negligent failure to repair is practically the same as to the tenant himself. These propositions are fully established by the cases of Thompson v. Clemens, 96 Md. 196, 53 Atl. 919, 60 L. R. A. 580, and Pinkerton v. Slocomb, 126 Md. 665, 95 Atl. 965, wherein the whole question of the landlord's liability in such cases was fully considered, and we think, under the principles there stated, the testimony offered by the plaintiff was amply sufficient to have taken the case to the jury upon the questions as to the agreement to repair and as to the negligent failure to perform the agreement. The evidence we have referred to was legally sufficient to show a clear act of negligence on the part of the landlord beyond the mere breach of the contract to repair."

The Washington Supreme Court in Mesher v. Osborne, 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917, says:

"(5) Whether the landlord is ever liable in tort for injuries to the tenant or his guest arising solely from his breach of covenant to repair, where the complete possession is turned over to the tenant, is a question upon which the authorities are hopelessly divided. Many courts, perhaps the more numerous, tend to the view that there is no such liability and that the tenant is remitted to his action on the contract and cannot recover for personal injuries because they are too remote to have been within the contemplation of the parties to the contract when it was made. Dustin v. Curtis, 74 N. H. 266, 67 Atl. 220, 13 Ann. Cas. 169, 11 L. R. A. (N. S.) 504, and cases cited in note; Tuttle v. Gilbert Mfg. Co., 145 Mass. 169, 13 N. E. 465. In some jurisdictions it is held that where he so covenants there is an affirmative duty on the landlord to repair defects existing at the time of the lease, the failure to observe which is negligence giving ground for action for personal injuries caused thereby to any one lawfully on the premises. In such a case the lease is a mere matter of inducement material only as determining the negligence and as determining that the plaintiff was lawfully on the premises; the action being in tort. Moore v. Stelies (C. C.) 69 Fed. 519; Schoppel v. Daly et al., 112 La. 201, 36 South. 323; Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289. Other cases hold that no action will lie as for negligence until reasonable notice to the landlord of the defect even in case of covenant to repair. Thompson v. Clemens, 96 Md. 196, 53 Atl. 919, 60 L. R. A. 580; Flood v. Huff, 29 Misc. Rep.

351, 60 N. Y. Supp. 517. A carefully compiled and discriminating text, after noting the hopeless conflict of the authorities and the hairsplitting distinctions indulged by some of the court, uses the following language: ' * * * The law on the subject is in a state of transition. In some of the earlier cases holding that an action of tort did not arise on a breach of the covenant in the case presented, the general expressions used would include the proposition that no such action could arise. But it is believed that, restricting those cases to the issue presented, there is nothing to exclude general harmony on the proposition where there is a covenant by the landlord to keep the premises in safe and tenantable condition, and the landlord has knowledge or notice of the existence of such defects as renders the use of the property in the manner contemplated by the lease dangerous to the tenant, and the tenant, his guests or family, suffer personal injury therefrom after a reasonable time for making the premises safe, since such notice or knowledge, in the absence of contributory negligence, the landlord is liable in an action of tort therefor. In those jurisdictions where damages for personal injuries are held recoverable against the landlord for injuries caused by the want of repairs he had agreed to make, and of the necessity of which he had been notified, it is said that the nature of the covenant is such as naturally to create a reasonable anticipation that the neglect to perform it will probably be the cause of personal injuries being inflicted on the tenant, his guests, family, and servants; that the covenant gives rise to a corresponding duty either to exercise such supervision as may be necessary, or to act with requisite promptness on notice, as the case may require; and that an action of tort is maintainable for the injury consequent on the neglect to perform it, the covenant being set up as a matter of inducement. * * *' Shearman & Redfield, Negligence (6th Ed.) § 708a."

Discussing liability of the lessor for injury to an employee of the lessee, the Supreme Court of Tennessee, in the case of Merchants' Cotton Press & Storage Co. v. Miller, 135 Tenn. 187, 186 S. W. 87, L. R. A. 1916F, 1137, says:

"The action of the injured employee, for example, in such cases is not deemed to be on the contract, for the employee is of course a stranger to the lessor's obligation to repair or keep repaired. The remedy is considered to be one for the wrong committed by the lessor in his negligent failure to perform a duty voluntarily assumed by him which he must be held to know would protect the employee of the tenant, as such user of the demised premises, from injury if his engagement be kept, or expose the servant to injury otherwise. Instead of the duty being law-imposed, it is self-imposed. The fact that the duty is voluntarily taken on should not detract from its scope and effect, or lessen the implication which the law will make. Such a duty on nonobservance may constitute the culpable negligence that is the basis for an action sounding in tort. The implication of legal duty and the delictum arise in this way out of the obligation incorporated in the contract,

258 S.W.—66

not on the contract. Edwards v. New York, etc., R. Co., 98 N. Y. 245, 50 Am. Rep. 659; Stillwell v. South Louisville Land Co. (Ky.) 58 S. W. 696, 52 L. R. A. 325; Thomas v. Vannuci, 185 Ill. App. 414; Patten v. Bartlett, 111 Me. 409, 89 Atl. 375, 49 L. R. A. (N. S.) 1120; Flood v. Pabst Brewing Co., 158 Wis. 626, 635, 149 N. W. 489. And see Stenburg v. Wilcox, 96 Tenn. 163, 33 S. W. 917, 34 L. R. A. 615.

"There is no undue hardship on the lessor in such case. He has seen fit to interpose his own agreement to repair, and thereby tended, at least, to cause the lessee to hold back and wait for its execution on his part. He has elected to retain for his own, as primarily resting on him, the duty of care in the particular regard, and should not complain if the law leaves the burden where he placed it and holds him not exempt."

See, also: Good v. Hemert (Minn.) 131 N. W. 466; Barron v. Ledloff (Minn.) 104 N. W. 289; Lowe v. O'Brien (Wash.) 138 Pac. 295; Schoppel v. Daley (La.) 36 So. 322; Thompson v. Clemens (Md.) 53 Atl. 919, 60 L. R. A. 580; Pinkerton v. Slocomb, 126 Md. 665, 95 Atl. 965; Patten v. Bartlett (Me.) 89 Atl. 375, 49 L. R. A. (N. S.) 1120; Graff v. Lemp Brewing Co. (Mo.) 109 S. W. 1044; Pollock v. Perry, 217 S. W. 967.

[2] In this case plaintiff in error not only entered into a valid contract to repair for the purpose of protecting the child from injury, but also a few days prior to the accident assured the parents that the repair would be made immediately. They thereby misled the parents. They induced the parents to believe that they had complied with the terms of the contract, which likely caused them to relax their diligence in looking after the safety of the child. By entering into the contract plaintiffs in error brought themselves in such relation to the child that they owed it not merely a moral, but a legal, duty, to use ordinary care to protect it from this injury. In 21 Am. & Eng. Ency. of Law (2d Ed.) p. 461, it is said that, "although negligence is the violation of a legally implied duty, yet the relation out of which the duty arises by implication may well be created by a contract," and at page 471 it is said that "as the doctrine is expressed in a frequently cited case (Heaven v. Pender, 11 Q. B. D. 503) whenever one person is placed in such a position with regard to another that it is obvious that if the former does not use ordinary care and skill in his own conduct he will cause danger of injury to the person or property of the latter, a duty arises to use ordinary care and skill to avoid such danger." It is true the duty was created by the contract. Independent of the contract there would have been no duty. Some courts assert a distinction between a duty imposed by law, and one assumed by contract. While they admit the duty exists, they say that that imposed by law is a general duty, while that as-

sumed by contract is not, and they conclude that a negligent failure to perform a general duty imposed by law will render liable one for the proximate result of his negligence, but that such failure by one assuming the duty by contract will not. We can conceive of no reason for this distinction. Law imposes the duty on an employer to furnish the employee a reasonably safe place in which to work. It also imposes upon parties to contracts the duty to comply with their valid agreements. The duty is just as general in the one case as it is in the other. Ordinarily a contract by a landlord to repair is made with a view to comfort and convenience only, and not for the purpose of protecting the tenant or a member of his family from some threatened personal injury. In such case no duty would be implied to use care for protection against injury of this character. However, it being evident in the instant case that the plaintiffs in error entered into the contract to make this repair, contemplating at the time that their failure to do so would result in defendant in error falling from the window, their negligent failure to perform their contract rendered them liable for the injury.

We think the Court of Civil Appeals has correctly decided all questions presented in the application for writ of error, and recommend that the judgments of that court and the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.